## ASHLAND EXPLORATION, INC., Appellant,

v.

Elmer TACKETT; Special Fund; Richard H. Campbell, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 97–CA–2551–WC.

Court of Appeals of Kentucky.

July 2, 1998.

William P. Emrick, Ashland, for Appellant.

Randy G. Clark, Pikeville, for Appellee, Elmer Tackett.

David W. Barr, Louisville, for Appellee, Special Fund.

Before GUIDUGLI, JOHNSON and SCHRODER, JJ.

*OPINION*

SCHRODER, Judge.

Ashland Exploration, Inc. (Ashland) petitions for review of a decision of the Workers' Compensation Board (Board), which affirmed the administrative law judge's (ALJ) award of total disability benefits to Elmer Tackett (Tackett). Ashland argues that because Tackett returned to work, at the same or higher rate of pay, after his injury, he is limited to two times the highest functional impairment rating assigned to him, for 425 weeks. We disagree, and, therefore, affirm.

Tackett was injured on February 21, 1995, when a wellhead exploded, injuring his right hip and abdomen. He received temporary total disability (TTD) benefits until his return to work on March 10, 1995. He returned to the same or higher rate of pay and remained working for three months, until June 12, 1995, when he received further medical treatment for his work-related problems. He again received TTD benefits until his

return to work on October 20, 1995, again at the same salary. Tackett was now suffering from low back strain radiating into the legs and abdominal discomfort. He finally retired in March 1996 because he could not continue to work in such pain.

Tackett filed a claim based on the work-related injury and an occupational disease claim based on hearing loss. The ALJ found Tackett 15% occupationally disabled based on the hearing loss, and Ashland does not contest this finding.

The injury claim was supported by medical evidence from several physicians, and the highest functional impairment rating assigned was 10%. The ALJ concluded:

11. After evaluating the lay and medical evidence; applying the provisions of KRS 342.0011(11), the principles enunciated in *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968), and all other relevant law; and exercising the adjudicator's discretion in translating functional impairment and limitations into occupational disability, it is determined that plaintiff is suffering a permanent occupational disability of 85% as a result of the work injuries he sustained February 21, 1995. Such injuries have resulted in a substantial degree of permanent functional impairment; and while he apparently retains the capacity for lifting activities that would allow him to engage in labor requiring a medium level of physical exertion, the other limitations or restrictions to which plaintiff is subject would, in all likelihood limit him to light or less strenuous forms of work and preclude a return to the job that accounts for the last 13 years or so of his occupational history....

12. Because of the two periods that plaintiff returned to work, the defendant-employer maintained that plaintiff's recovery for permanent disability attributable to the February 21, 1995, work injuries cannot exceed the factor obtained by doubling his functional impairment rating in accordance with the provisions of KRS 342.730(1)(b); however, to so limit plaintiff's recovery would constitute a manifest injustice. Although plaintiff returned to work, he made an extraordinary effort in doing so and attempted to perform his job duties when, in all likelihood, he was physically unable to do so on other than a short-term basis. Further, it appears that his return to work in October, 1995, was more coerced than voluntary. Essentially, because of the findings of an evaluating physician, plaintiff was placed in the position of either returning to work or doing without an income upon which he could live. Moreover, the record has shown that the residuals of the February 21, 1995, work injuries have rendered plaintiff so disabled that he is unable to resume the type work that he performed for the defendant-employer. Therefore, the provisions of KRS 342.730(1)(b) have no application to this claim.

Ashland appealed to the Board, making the same argument as it does before this Court. The Board rejected Ashland's contention despite recognizing that a literal interpretation of KRS 342.730(1)(b) would support its view. However, the Board stressed that its interpretation of the statute should not lead to an absurd result and added that it had to be interpreted in the context of other statutes in the Act, specifically, KRS 342.125(1):

If the interpretation as sought by Ashland is adopted, it would render a portion of the reopening statute a nullity. Clearly, KRS 342.125(1) provides that an individual who has received an award or order under KRS 342.730(1)(b), if upon showing a change in occupational disability, is entitled to a reopening of their claim. Presumably, therefore, had Tackett been voluntarily compensated at the rate of one or two times functional impairment during the period in which he continued to work with Ashland, but ultimately ceased working in March 1996, all would agree that he could pursue a reopening pursuant to KRS 342.125(1). It is just by happenstance of this claim that by the time it was before an ALJ he had ceased his employment.

In our opinion, the only reasonable manner in which one can reconcile these potentially conflicting statutory provisions is for the ALJ, as did the ALJ herein, to evaluate the circumstances surrounding the injured

worker's departure from work and determine whether he could have reasonably been anticipated to work for an indefinite period of time which is anticipated by KRS 342.730(1)(b) and KRS 342.125(1).

We agree with the Board's analysis. KRS 342.730(1)(b) states in part:

> For permanent, partial disability, where an employee returns to work at a wage equal to or greater than the employee's preinjury wage, sixty-six and two-thirds percent (66–2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by his percentage of impairment caused by the injury ..., unless the employee establishes a greater percentage of disability as determined under KRS 342.0011(11), in which event the benefits shall not exceed two (2) times the functional impairment rate, for a maximum period, from the date the disability arises, of four hundred twenty-five (425) weeks subject to the provisions of subsection (1)(d) of this section....

■ As with other 1994 amendments to the Act, KRS 342.730(1)(b) was aimed at curbing economic abuses of the workers' compensation system. Thus, the Legislature intended to limit the amount of workers' compensation benefits an able-bodied claimant may receive if he, at least, returns to work at his pre-injury wage and is physically capable of remaining in the job he returns to permanently or indefinitely. Although Tack-

ett returned to work, at the same wage, after his work injury, he had to remain off work for four months after his initial return, and after five more months of working at the same rate, he ultimately had to retire because he could no longer physically handle the job. In the facts of this case, the ALJ properly found, within his discretion, that Tackett was not really able to remain in his job, despite two gallant efforts to return. Therefore, KRS 342.730(1)(b) is inapplicable.

■ We also believe that the statute assumes that the worker is less than totally disabled—otherwise he could not continue in his prior job or his new position at his preinjury, or greater, wage. The ALJ found Tackett totally, not partially, disabled. We see nothing in the amended statute which prevents the ALJ from considering the cumulative effects of a work-related injury and an occupational disease such that they may combine to render a claimant totally disabled.

For the aforementioned reasons, the decision of the Workers' Compensation Board is affirmed.

All concur.