**KENTUCKY RETIREMENT SYSTEMS, Appellant,**

v.

**Sandra BOWENS, Appellee.**

**No. 2007–SC–000509–DG.**

Supreme Court of Kentucky.

April 23, 2009.

---

Michael Todd Butler, Jennifer A. Jones, Leigh Ann Jordan, Katherine I. Rupinen, Brown J. Sharp, II, Brian C. Thomas, James Eric Wampler, Kentucky Retirement Systems, Frankfort, KY, Counsel for Appellant.

Michael S. Endicott, Paintsville, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, the Board of Trustees of the Kentucky Retirement Systems, (hereinafter the "Board") appeals to this Court seeking relief from the opinion of the Court of Appeals. Specifically, Appellant argues the Court of Appeals erred: 1) by applying the "cumulative effect" rule, as enunciated in *Dillon v. Celebrezze,* 345 F.2d 753, 757 (4th Cir.1965), and 2) in adopting the "treating physician rule," pursuant to *Houston v. Secretary of Health & Human Servs.,* 736 F.2d 365, 367 (6th Cir.1984). For the reasons discussed herein, we affirm the opinion of the Court of Appeals on application of the "cumulative effect" rule, but reverse its adoption of the "treating physician" rule.

### Facts

Appellee, Sandra Bowens, was an employee of Johnson County Home Health for approximately nine years, from July 1995 until she went on leave under the Family Medical Leave Act (FMLA) in May 2004. As a home health aide, Appellee's duties included washing patients' hair, cooking their meals, cleaning their home, and bathing them.

In July 1997, she was involved in a motor vehicle accident during the course of her employment, as a result of which, she sustained a "flexion-hyperextension injury" to her neck. Her head, back, and arm were also injured in the accident. As a result of her injuries, she was reassigned to office work, where her duties included answering the phones, making charts, completing the mail log, ensuring maintenance of company vehicles, transporting documents, and inputting data into the computer system.

In March 2002, she was involved in a second motor vehicle accident. The record is unclear as to whether this accident occurred in the course of her employment.

This accident resulted in a torn medial meniscus in her right knee, which would have required surgery to correct. Appellee did not undergo surgery to repair her meniscus, as she was diagnosed with cancer around January 2003.[1] This latter diagnosis resulted in a mastectomy of her left breast on February 7, 2003, followed by numerous radiation and chemotherapy treatments. Incredibly, during the course of her radiation and chemotherapy treatments, Appellee continued to work, often arriving before her co-workers, leaving to take her treatments, and then returning to the office for the rest of the day. She was unable to complete her chemotherapy, however, because of a bad reaction to it.

There were multiple physical side-effects of the radiation and chemotherapy. She suffered from fatigue, decreased mobility and swelling of her arm. She suffered from cognitive difficulties and loss of memory. She was often hoarse and coughed chronically. She also had her lymph nodes removed and suffered from radiation burn, causing her to forego the last five treatments of chemotherapy. Further, she suffered from arthritis in her back and her still unrepaired torn medial meniscus. In 2004, she was diagnosed with ataxia and asthma. She also complained of additional ailments including headaches, dizziness, fatigue, carpal tunnel syndrome, unsteadiness, and memory problems.

During her radiation and chemotherapy treatments, Appellee was granted an informal work accommodation. The accommodation limited the amount of time Appellee spent picking up documents and limited the amount of weight she was required to lift. This accommodation ended with her treatments.

Although she was still working at the time, Appellee applied for disability retirement on March 21, 2003, citing arthritis, breast cancer, and the injuries sustained from the two (2) motor vehicle accidents as the cause of her disability.[2] She continued to work, however, until May 26, 2004.

Her application for state benefits, however, was denied and an administrative hearing was held on June 24, 2004. The hearing officer thereafter recommended that Appellee's application for retirement benefits be denied and the Board adopted the hearing officer's Report and Recommended Order as its final administrative decision, denying Appellee's application for disability retirement benefits.

Appellee then filed a petition for judicial review in the Franklin Circuit Court. That court affirmed Appellant's final administrative decision. Appellee then filed an appeal to the Court of Appeals, which affirmed the decision of the Franklin Circuit Court in part, and vacated and remanded in part for further proceedings consistent with the application of the "cumulative effect" and "treating physician" rules as aforementioned. We granted discretionary review.

### Law

▇▇▇▇ "In its role as the finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact." *McManus v. Kentucky Retirement*

---

1. Appellant testified at her disability hearing that her employer asked her not to have the surgery because she is the only employee who is able to obtain certain information off the computer, and her employer did not want her to take time off from work.

2. Appellee was awarded Social Security disability benefits for being totally and permanently disabled on September 19, 2003.

*Systems,* 124 S.W.3d 454, 458 (Ky.App. 2003) (internal quotation marks and citation omitted). Thus, "[a] reviewing court is not free to substitute its judgment for that of an agency on a factual issue unless the agency's decision is arbitrary and capricious." *Id.* at 458.

> In determining whether an agency's action was arbitrary, the reviewing court should look at three primary factors. The court should first determine whether the agency acted within the constraints of its statutory powers or whether it exceeded them.... Second, the court should examine the agency's procedures to see if a party to be affected by an administrative order was afforded his procedural due process. The individual must have been given an opportunity to be heard. Finally, the reviewing court must determine whether the agency's action is supported by substantial evidence.... If any of these three tests are failed, the reviewing court may find that the agency's action was arbitrary.

*Bowling v. Natural Resources and Environmental Protection Cabinet,* 891 S.W.2d 406, 409 (Ky.App.1994) (internal quotation marks and citation omitted). " 'Substantial evidence' means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998) (*citing Kentucky State Racing Comm'n v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972)). We review an agency's conclusions of law *de novo. See Aubrey v. Office of Attorney General,* 994 S.W.2d 516, 519 (Ky.App.1998).

**3.** The same argument was presented to the Board on exception from the hearing officer's

*Analysis*

### a. "Cumulative Effect" rule

■ Appellant argues the Court of Appeals erred in applying the "cumulative effect" rule and determining the hearing officer erred by failing to properly evaluate her injuries' combined effect upon Appellee. We disagree and uphold the Court of Appeals' application of the "cumulative effect" rule in this instance.

Appellee argued to both the Franklin Circuit Court and the Court of Appeals that Appellant failed to consider the "cumulative effect" of all of Appellee's medical problems in making its disability determination.[3] In this regard, the Franklin Circuit Court found that, KRS 61.600 requires only a finding based on the examination of the objective medical evidence. The hearing officer's findings of fact were based on a careful examination of all of the objective medical evidence presented. This is all that the statute requires.

The Court of Appeals, however, reached a different conclusion, relying on *Ashland Exploration, Inc. v. Tackett,* 971 S.W.2d 832, 834 (Ky.App.1998) ("We see nothing in the amended statute which prevents the ALJ from considering the cumulative effects of a work-related injury and an occupational disease such that they may combine to render a claimant totally disabled."). Noting that, under KRS § 61.600(5)(a)(2), Appellee's incapacity must be based on objective medical evidence, *as well as* her "residual functional capacity and physical exertion requirements," the Court of Appeals found that KRS 61.600(5)(a)(2) evidences a legislative intent that the cumulative effect of a disability claimant's ailments must also be considered in assessing the claimant's eli-

report and recommendation.

gibility for benefits. From a review of the record, the Court of Appeals did not believe the cumulative effects were so evaluated; nor do we.

KRS 61.600 provides, in part, that upon the examination of the objective medical evidence by licensed physicians pursuant to KRS 61.665, it shall be determined that: 1) the person, since his last day of paid employment, has been mentally or physically incapacitated to perform the job, or jobs of like duties, from which he received his last paid employment; 2) the incapacity is deemed to be permanent; and 3) the incapacity does not result directly or indirectly from bodily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent.

At issue here is whether Appellee was permanently incapacitated by her ailments. KRS 61.600 defines impairment as permanent "if it is expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months from the person's last day of paid employment in a regular full-time position." It further provides that "the determination of a permanent incapacity shall be based on the medical evidence contained in the member's file and the member's residual functional capacity and physical exertion requirements." A disability claimant's residual functional capacity:

shall be the person's capacity for work activity on a regular and continuing basis. The person's physical ability shall be assessed in light of the severity of the person's physical, mental, and other impairments. The person's ability to walk, stand, carry, push, pull, reach, handle, and other physical functions shall be considered with regard to physical impairments. The person's ability to understand, remember, and carry out instructions and respond appropriately to supervision, coworkers, and work pressures in a work setting shall be considered with regard to mental impairments. Other impairments, including skin impairments, epilepsy, visual sensory impairments, postural and manipulative limitations, and environmental restrictions, shall be considered in conjunction with the person's physical and mental impairments to determine residual functional capacity.

KRS 61.600(5)(b).

■ Appellee introduced evidence that:

1) As a result of a work-related car accident in 1997, she sustained a neck (a flexion-hyperextension) injury, back injury, pain in her shoulder, and arthritis in her back. She further asserted she had permanent lifting restrictions, possibly the result of the car accident.

2) She was involved in another car accident in 2002 which resulted in a tear in the medial meniscus of her right knee. The tear would require surgery to correct.

3) In January 2003, she was diagnosed with breast cancer, and she underwent a partial mastectomy of her left breast. She had three months of chemotherapy and thirty-four radiation treatments. She was unable to complete her chemotherapy because she had a bad reaction to the treatments.

4) Due to her bad reaction to chemotherapy and radiation treatments, she suffered from fatigue, burns on her skin, difficulties with her memory, and frequent coughing. She also had difficulty swallowing because her saliva production decreased as a result of the radiation.

5) In 2004, she complained of additional ailments, including headaches, dizzi-

ness, unsteadiness, and ataxia. Ataxia is defined by the New World Dictionary of the American Language 87 (2d ed.1978), as "difficulty coordinating voluntary bodily movements."

Further, Appellee testified that her primary or worst complaint was not knowing where the cancer was at the time. She testified that her worst physical complaint concerned her chest and her arm. She complained of fatigue. She was taking numerous medications for her multiple ailments.

Appellee's daughter, Tonya Spradling, lived next door to Appellee and testified at the hearing that she had to help her mother cook and clean. Appellee's husband testified that she complained primarily of knee, back, arm, and chest pain. He also testified that her memory had worsened. Moreover, in February 2005, one of Appellee's treating physicians, Dr. Belhasen, submitted a letter stating she "continue[d] to have multiple medical problems stemming from her breast cancer and subsequent mastectomy" and "continue[d] to be disabled."

As a result of her various ailments, Appellee's doctors found that she was unable to lift more than five (5) pounds; that she could not stand or walk for more than four (4) hours total in a work day, with no more than two hours uninterrupted; and that she could not sit for more than four (4) hours in a work day, with no more than one hour uninterrupted. She was unable to walk up stairs. Further, she could never climb, stoop, crouch, or kneel, and could only balance or crawl infrequently. She was restricted from moving machinery, among other environmental restrictions. Moreover, Appellee's ability to reach, push, and pull were affected by her impairments. Her various ailments also rendered her unable to type and typing was one of her primary job responsibilities.

In reviewing the evidence, the hearing officer assessed the impact of each of Appellee's individual ailments. Regarding her pulmonary problems, the hearing officer concluded Appellee was not disabled because "[t]he tests closest in time to [Appellee's] last day of paid employment revealed normal LV systolic function, mild concentric LVH, decreased compliance, and small pericardial effusion. A chest x-ray of May 4, 2004[,] was interpreted as showing no convincing evidence of acute cardiopulmonary pathology."

In assessing Appellee's orthopedic problems, the hearing officer concluded that Appellee was not disabled, although she had a torn medial meniscus in her knee, because she had a "full range of motion with no swelling or deformity" in that knee as of December 2002. Appellee also had a total body scan in April 2004 which revealed no "skeletal metastases and was noted to be unremarkable." Further, after chemotherapy in March 2003, Appellee attended physical therapy for her neck and shoulder problems; she was released from therapy after multiple sessions "with increased range of motion."

As to the side effects of chemotherapy, the hearing officer acknowledged that "[i]t is understandable that [Appellee] may require a period to recover from [such side effects], but in this case, [Appellee] continued to work in her sedentary position even during treatment." The hearing officer noted Appellee completed her treatment "in August 2003 and was able to continue working" until May 2004. Further, the hearing officer noted that "[t]here does not appear to be a specific incident that caused [Appellee] to stop working on that day. [Appellee's] physicians have indicated she is unable to perform her job duties but have not submitted objective evidence to support their conclusory statements."

Yet, Appellee introduced reports of functional capacity examinations from two of her treating physicians, including Dr. Belhasen's 2003 medical report submitted with Appellee's application for Social Security Disability Insurance Benefits where she opined that Appellee was "unable to sit, stand, or walk for long periods;" "unable to walk up stairs;" "unable to lift more than ten pounds;" and "unable to type," due to her various ailments. Such evidence constitutes "objective medical evidence."

Nonetheless, the hearing officer found "[t]here is no evidence that [Appellee] suffers from carpal tunnel syndrome and the most recent reports submitted reflect [Appellee] no longer has breast cancer." He noted that although Appellee complained of unsteadiness and memory problems, "no objective testing [was] submitted to confirm the presence of either condition or to what extent [Appellee is] impaired by the conditions."

After his review of the evidence, the hearing officer concluded that Appellee "failed to provide objective evidence of a *condition* that would permanently prevent her from performing her usual work activity." He then recommended denial of Appellee's application for disability retirement benefits.

Yet, in considering Appellee's claim for disability benefits, the hearing officer evaluated the effect of each insular injury on Appellee's ability to perform her job duties and determined that no one injury rose to the level of disabling Appellee. He did not evaluate the *cumulative effect* of Appellee's multiple ailments on the "whole person." At a minimum, Appellee produced sufficient evidence of disability due to her various ailments that she was entitled to a determination of whether the *cumulative effect* of her ailments rendered her unable to work. However, by analyzing each ail-ment singularly, the hearing officer "so fragmentized [Appellee's] several ailments and the medical opinions regarding each of them that he failed to properly evaluate their effect in combination upon this claimant." *Dillon*, 345 F.2d at 757. The hearing officer's review and findings regarding Appellee's injuries thus failed to consider her multiple ailments in accordance with the "residual functional capacity" standard in KRS 61.600(5)(a)(2), which clearly, in instances such as this, supports an additional "cumulative effects" analysis.

By failing to properly consider the cumulative effect standard implicit in KRS 61.600, Appellant exceeded the constraints of its statutory powers and arbitrarily denied Appellee's disability claim. *Bowling*, 891 S.W.2d at 409. Given Appellee's evidence in this case, a "cumulative effects" analysis is mandated. Accordingly, we affirm the Court of Appeals on this issue.

**b. "Treating Physician" rule**

■ Appellant next argues the Court of Appeals was erroneous in determining that the opinions of treating physicians are entitled to more weight than the opinions of the non-examining physicians, i.e., the treating physician rule. For the reasons set forth herein, we agree.

KRS 61.600 provides that the Board must consider the objective medical evidence provided by licensed physicians in determining disability. KRS 61.510(33) defines objective medical evidence as:

reports of examinations or treatments; medical signs which are anatomical, physiological, or psychological abnormalities that can be observed; psychiatric signs which are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; or laboratory findings which are anatomical, physiological, or psychological phe-

nomena that can be shown by medically acceptable laboratory diagnostic techniques, including but not limited to chemical tests, electrocardiograms, electroencephalograms, X-rays, and psychological tests[.]

Here, the Court of Appeals adopted a new doctrine outside the statutory scheme. In doing so, it relied upon a federal case interpreting Social Security Administration statutes and regulations and found that the opinions of treating physicians must be given greater weight than the opinions of non-treating physicians, to wit:

> Although there is no Kentucky case on point, in a Social Security Disability context, the opinion of a treating physician is "given greater weight than that of the government's physician ... [but] only if the treating physician's opinion is based on sufficient medical data." *Houston v. Secretary of Health & Human Services*, 736 F.2d 365, 367 (6th Cir.1984). We find this logic persuasive, particularly considering that the physicians on the Medical Review Board who reviewed Appellant's application were non-examining physicians. It appears, based on the conclusions reached by the hearing officer, that he gave greater weight to the non-examining physicians' opinion than to those of the treating physicians. Therefore, adopting the logic of *Houston*, we find that the agency erred when it determined that the opinions of treating physicians are not entitled to more weight than the opinions of the non-examining physicians serving on the Medical Review Board. Consequently, the circuit court erred when it concluded that this claim lacked merit.

■■■ The introduction of the "treating physician" rule into Kentucky disability analysis is inappropriate for several reasons. Although the statute does not set forth a standard for weighing this evidence, it is well-settled that the trier of fact may evaluate the evidence presented and give the evidence the weight the factfinder deems appropriate. *McManus*, 124 S.W.3d at 457–458. In *Bowling*, the Court said "[t]o put it simply the trier of facts in an administrative agency may consider all the evidence and choose the evidence that he believes." 891 S.W.2d at 410 (*quoting Com. Transp. Cabinet v. Cornell*, 796 S.W.2d 591, 594 (Ky.App.1990)). Further, a reviewing appellate court cannot substitute its judgment for that of the fact-finder regarding evaluations of evidence or questions of fact. *See 500 Associates, Inc. v. Natural Resources and Environmental Protection Cabinet*, 204 S.W.3d 121, 132 (Ky.App.2006); *Louisville Edible Oil Products, Inc. v. Revenue Cabinet Commonwealth of Kentucky*, 957 S.W.2d 272, 273 (Ky.App.1997) ("The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.").

■■■ Moreover, in *Houston*, the Sixth Circuit was interpreting specific federal regulations, 20 C.F.R. § 404.1529, 20 C.F.R. § 404.1527(d)(2), that give greater weight to the opinion of a treating physician if that opinion is supported by substantial evidence. *See Allen v. Califano*, 613 F.2d 139 (6th Cir.1980). There is no analogous Kentucky statute authorizing greater weight to be given to the opinions of the treating physician. As administrative agencies are creatures of statute, such a rule is inappropriate. *Dept. of Natural Resources and Environmental Protection v. Stearns Coal and Lumber Co.*, 563 S.W.2d 471 (Ky.1978). *See also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) ("Nothing in the Act itself ... suggests that plan administrators must accord special deference to the opinions of treating physicians.").

Therefore, pursuant to KRS 13B.150(2), the Court of Appeals was without authority to adopt and apply the treating physician rule in an administrative hearing such as this.

### Conclusion

For the foregoing reasons, we reverse the Court of Appeals on the "treating physician rule," but affirm and remand this matter to the Board for further review of the evidence under the "cumulative effect" standard consistent with this opinion.

All sitting.  All concur.