SMALLWOOD, JUDGE:
Commonwealth of Kentucky, Cabinet for Health and Family Services and Audrey Tayse Haynes in Her Official Capacity as Secretary (hereinafter "the Cabinet") appeal from an opinion and order of the Franklin Circuit Court. In this complex Medicaid recoupment proceeding, the Cabinet argues that the Franklin Circuit Court erred: in failing to accept certain extrapolation methods for determining Medicaid overpayments; that the Secretary for the *867 Cabinet appropriately assigned the burden of proof to Pediatric Specialist, PLLC; and in excluding the testimony of Optum employees as contingency fee paid expert witnesses. For the reasons set out below, we find no error and AFFIRM the opinion and order on appeal.
In the interest of judicial economy, we adopt the factual and procedural recitation of the Franklin Circuit Court, as follows:
Factual and Procedural Background
This case arises from a decision of the former Secretary of [Cabinet for Health and Family Services (CHFS) ], Audrey Tayse Haynes,[2] to reject the Conclusions of Law and Recommended Order of Hearing Officer Susan Gormley Tipton in favor of adopting her own Final Order affirming a demand letter issued to Petitioner [Pediatric Specialist] by CHFS requiring the repayment of $1,251,867.58 in alleged overpayments resulting from an audit and extrapolation of findings. The Hearing Officer's Findings of Fact were adopted in whole by the Secretary and are detailed below.
Petitioner, Pediatric Specialist, PLLC was a three-physician practice group in Henderson, Kentucky, consisting of two neonatologists, Iyad Aljabi and Pushkaraj Jadhav, and a pediatric gastroenterologist, Maria Aljabi. The Cabinet for Health and Family Services, Department of Medicaid Services is responsible for administering in the Kentucky Medical Assistance Program in accordance with the requirements of Title XIX of the Social Security Act and [Kentucky Revised Statutes (KRS) ] Chapter 205. Petitioner is subject to 907 KAR 1:671, 907 KAR 1:672, and 907 KAR 1:673, which deal with recoupments of funds by the Department that are determined to be overpaid, enrollment for Medicaid providers, and claims processing, respectively. Petitioner is reimbursed by the Department for the costs of certain services provided to Medicaid patients, pursuant to a Provider Agreement entered into with Medicaid in 1998. This Agreement required Petitioner to keep certain Medicaid-related records for a minimum of five years, allow for Medicaid to conduct audits, and agree to return overpayments to the Medicaid program.
In 2010, the Department entered into a contract with OptumInsight f/k/a/ Ingenix Public Sector Solutions, Inc. ("Optum"), at which time Optum became the primary surveillance and utilization review ("SUR") contractor, the program requirement of Section 6034 of the Deficit Reduction Act of 2005 designed to protect the Medicaid program form [sic] fraud and abuse by recipients. Pursuant to this contract, Optum was to identify overpayments to providers for a 12.5% contingency fee. Carl Ishmael, assistant director for the Department's Division of Program Integrity, was "involved and familiar with both the request for proposal issued for the contract and the contract itself, as well as applicable state and federal Medicaid regulations." He oversaw day-to-day activities, including the auditing process, the implementation of federal requirements, and the handling of communications with the Center for Medicaid Services ("CMS"). In February 2011, CMS amended the Kentucky State Plan to allow for recovery audit contractor ("RAC") service contracts. Optum's contract was thereafter amended to include RAC services, with a contingency fee of 5% for identifying underpayments. The section of the auditing process regarding underpayment became effective by federal regulation in January 2012. The Department filed an *868 amendment to the Kentucky State Plan requesting CMS approval of a five-year look-back period for the RAC function to allow for RAC audits to pre-date RAC contracts. This was approved by CMS and became effective January 1, 2012.
Optum then identified certain provider areas for auditing purposes. Petitioner was identified as a potential provider for an on-site extrapolation audit after Optum discovered outliers which indicated some of Petitioner's claims were higher than some of their peers. Testimony of Ishmael detailed seeing Optum's request, but that he did not recall whether anyone at the Department posed any questions concerning it. Petitioner's office manager at the time of the on-site audit was Dottie Cunningham, and she performed billing functions for Petitioner. Cunningham worked with personnel to retrieve records from the hospital for the audit, as the majority of Petitioner's work was performed at the hospital, and she provided these records to Optum's staff as requested. Ishmael, though not a certified coder, testified that he was familiar with the approach Optum used to audit Petitioner, and that, prior to the audit, Optum submitted a sampling and extrapolation methodology as a deliverable for its contractual function, which was approved by Ishmael. Ishmael testified that he had no training on sampling and extrapolation, but he recalled discussing it during two to three meetings with Optum personnel.
Further testimony from Ishmael explained that an algorithm was first used to select a random sample of claim lines, which was then stratified, reviewed for error, and the highest paid twenty-five (25) claims were identified. These claims were removed and the remaining claims were used to generate the extrapolation. Optum then prepared a demand letter and explanation of findings to inform Petitioner of the results, and presented the audit to the Department for review. Ishmael testified that he and other Department employees would have reviewed the letter prior to its approval, and, while he did not review any specific medical records or claims pertaining to the audit, it was possible that the Department's coder may have looked at some of the specific claim lines. He further testified that he did not recall any changes made by the Department's personnel prior to the approval of the demand letter, nor did he recall any specific discussions regarding the audit's outcome.
On August 6, 2011, the Department sent the demand letter to Petitioner, which referenced a post payment review of claims paid for the period of June 16, 2006 through June 9, 2011. The review was said to have been conducted in conjunction with Optum, the SUR vendor, and, as a result of the audit, Petitioner was asked to return alleged overpayments amounting to $1,251,867.58. Seven schedules detailing alleged billing errors were attached to the demand letter, along with an explanation of findings. After a Medicaid determination involving an appealable issue is made, such as in this case, a provider is entitled to request a dispute resolution meeting ("DRM") under 907 KAR 1:671. This is an informal process used to clarify, or present evidence or testimony to explain errors, and both parties can ask questions. The Department is entitled to waive this meeting, and instead issue a decision in lieu of a DRM. Petitioner requested a DRM on September 6, 2011, and the Department waived the DRM. Petitioner then, on November 11, 2011, requested an administrative hearing.
I. The Hearing Officer's Analysis *869 Prior to the Hearing, the Hearing Officer granted a Motion for Partial Summary Judgment and a Motion in Limine filed by Petitioner. The Motion for Partial Summary Judgment was based on the Department's use of statistical sampling and extrapolation in the context of recouping overpayments through a normal auditing process. The Hearing Officer concluded that the procedure to recoup overpayments was laid out in 907 KAR 1:671 § 2, a regulation that does not provide for the use of extrapolation. The process for identification and referral of unacceptable practices, however, as laid out in 907 KAR 1:671 § 3, does provide for the use of statistical sampling and extrapolation, but only in the context of fraud or provider abuse as defined in KRS 205.8451(2) or (8) or willful misrepresentation by the provider. The use of the extrapolation method to identify providers who should be referred for more careful scrutiny of possible fraud or criminal violations (§ 3) is entirely different from using extrapolation methodology to arrive at a final determination of routine claims overbillings (§ 2). There was no evidence that the method used for extrapolation of claims in this case was statistically valid, or reliable to arrive at an accurate final amount for alleged overbillings.
The Hearing Officer concluded that the distinction between typical overpayment situations and "the more serious issue of unacceptable practices" was critical to this case, and that the record reflected that Petitioner's situation was the former. As such, the Hearing Officer found that the extrapolation was not authorized in this instance, and that limited the Hearing Officer's review to non-extrapolated amounts identified by the Department.
Additionally, the Hearing Officer granted Petitioner's Motion in Limine to exclude Optum's employees, as Optum had a contingent fee interest in the outcome of the proceedings. As described above, Optum entered into a contract with the Department for SUR and RAC functions, resulting in a contingency fee of 12.5% of amounts recovered through retrospective operations, and the request for proposals by the Department included a requirement that the vendor awarded the contract provide witnesses for administrative appeal and court proceedings for those cases involving vendor-identified non-compliance.
The Hearing Officer interpreted Kentucky Supreme Court Rule 3.130 (3.4), which provides that a lawyer shall not "offer an inducement to a witness that is prohibited by law," to prohibit Optum employees from testifying, as the comments to SCR 3.130 (3.4) state that, while compensating a witness for his or her expenses or compensating an expert witness within "terms permitted by law" is allowed under the rule, "[t]he common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee." The Hearing Officer compared the Optum employee scenario to one that the American Bar Association addressed in ABA Formal Op. 87-354 (1987), which explained the issues of hiring a consultant who provided expert witnesses paid on a contingency fee. The ABA found that such an arrangement raised the same questions as direct payment of a contingency fee to an expert. Similarly, the Hearing Officer found that, as Optum was contractually obligated to have a project manager, a certified CPT coding specialist, an auditor, a nurse, and a SURS expert, Optum's payment of a contingency fee would be the equivalent of paying each of these individuals *870 a contingency fee. This would, therefore, bar them from providing testimony in this proceeding.
After excluding the Department's expert witness, and ruling on the Motion for Partial Summary Judgment, Ishmael was the only witness from the Department to testify during the administrative proceeding. Ishmael himself did not review the medical records at issue in this proceeding or review any specific claims, and therefore could not speak to specifics of the audit. However, Ishmael did provide an overview of the alleged errors set forth in the demand letter, which were as follows: Schedule 1, which involved alleged overpayments due to missing medical records totaling $1,810.96; Schedule 2, which involved overpayments and underpayments due to improper use of procedure codes totaling $132.92; Schedule 3, which involved overpayment due to billing for unauthorized service totaling $539.42; Schedule 4, which involved overpayment due to billing of services not rendered totaling $1,746.90; Schedule 5, which involved overpayment due to billing for the incorrect quantity of services provided totaling $8,804.08; Schedule 6, which involved alleged overpayment due to improper unbundling for services rendered totaling $35,404.78; and Schedule 7, which involved overpayment due to improper billing for procedure codes related to the provision of initial and follow-up critical care totaling $234,469.44.
Petitioner conceded that in Schedule 6, an overpayment caused by a Medicaid error was made in the amount of $35,257.50 for a venipuncture procedure. The Hearing Officer found that Petitioner offered several examples of claims it believed Optum should have validated or allowed. More specifically, in Schedule 7, by far the largest Schedule, Petitioner argued that the vast majority of the billing used was appropriate. Additionally, Petitioner argued that if it had used the coding Optum considered proper, Petitioner would have qualified to have been paid even higher amount. Multiple other claims were disputed by Petitioner, specifically through testimony of Ms. Cunningham and Dr. Aljabi.
Based on these findings of fact, the Hearing Officer, after clarifying that the Department had the burden to show Petitioner was overpaid for services performed pursuant to 907 KAR 1:671 § 9(14) and KRS 13B.090(7), found that the Department met its burden for the $35,257.50 that was undisputedly overpaid, but that the Department failed to meet its burden of proof with regard to the remaining non-extrapolated amounts. The Hearing Officer stated that, while the Department provided general testimony as to the audit findings and schedules, the witness, Ishmael, was not involved in reviewing or analyzing the claims in question and did not provide specific testimony as to which claims were examined, which records were examined, and why claims were deemed to be erroneous. The Hearing Officer then recommended that the demand letter be affirmed as to the $35,257.50 overpayment listed in Schedule 6, and reversed as to the remaining allegations of overpayments.
II. The Secretary's Analysis
The Secretary disagreed. In her Final Order, Secretary Haynes adopted the Hearing Officer's Finding of Fact in full, without alteration or addition. However, the Secretary disagreed with the Conclusions of Law, based on the Hearing Officer's granting of Petitioner's Motion for Partial Summary Judgment disallowing the use of extrapolation to arrive at an amount of overpayments, and the granting of the motion in limine excluding *871 the testimony of the auditor. The Secretary held these two decisions were in error, and adopted a significant portion of the Cabinet's Exceptions verbatim, explaining the reasoning behind the errors. With regard to the Motion for Partial Summary Judgment, the Secretary explained that 907 KAR 1:1671 § 1(40) defines "unacceptable practice" as conduct that includes "fraud" or "provider abuse" as defined by KRS 205.8451(2) and (8), or "willful misrepresentation." More specifically:
(2) "Fraud" means an intentional deception or misrepresentation made by a recipient or a provider with the knowledge that the deception could result in some unauthorized benefit to the recipient or provider or to some other person. It includes any act that constitutes fraud under applicable federal or state law.
....
(8) "Provider abuse" means, with reference to a health care provider, practices that are inconsistent with sound fiscal, business, or medical practices, and that result in unnecessary cost to the Medical Assistance Program established pursuant to this chapter, or that result in reimbursement for services that are not medically necessary or that fail to meet professionally recognized standards for health care. It also include [sic] practices that result in unnecessary cost to the Medical Assistance Program.
KRS 205.8451(2) and (8). Further, "[e]rrors in coding or substandard record keeping which result in overpayments," are inconsistent with sound fiscal business practices and result in unnecessary costs to the Medicaid Program. Therefore, the Secretary held that these extrapolations are allowed by regulation, and "[t]he burden of proof is on the [Petitioner] to dispute the audit findings on the claims that were sampled at the time of the audit." Final Order at 3.
As for the motion in limine striking the testimony of the auditor's employee, the Secretary disagreed with the Hearing Officer's conclusion that, pursuant to SCR 3.130 (3.4), the employee's testimony was barred as Kentucky law prohibits expert witnesses being paid on a contingent-fee basis. The Secretary found that, as SCR 3.130 (3.4) allows for the compensation of expert witnesses "on terms permitted by law," Optum's employee should be considered to have express permission to be paid on a contingent-fee basis. Optum is considered to be a SURS vendor, pursuant to 42 CFR Part 456, and a RAC auditor for overpayments, and therefore must identify overpayment and underpayments under 42 U.S.C. § 1396a(a)(42). This is also reflected in the State Medicaid Plan. Additionally, Optum is required by federal law to be paid on a contingency basis, as 42 U.S.C. § 1396a(a)(42)(B)(ii)(I)-(II) states that "payment shall be made to such a contractor only from amounts recovered" and that "from such amounts recovered payment ... shall be made on a contingent basis for collecting overpayments."
Further, the Federal Registry reflects that the Centers for Medicare and Medicaid Services ("CMS") stated that CMS has "surveyed States that have RAC-like programs which utilize a contingency fee payment structure and ha[s] not learned of any circumstances in which RACs were improperly incentivized to recover overpayments from Medicaid providers." 76 Fed. Reg. at 57,824. The Secretary, and the Cabinet, felt that such a determination by CMS was controlling in this case, and brought the *872 compensation of Optum's expert witness on a contingent-fee basis within SCR 3.130 (3.4)'s definition of "terms permitted by law." Therefore, the Secretary concluded that the extrapolation was proper, the testimony should not have been excluded by the Hearing Officer, and that the burden of proof was on the Petitioner to dispute the audit findings on the claims that were sampled at the time of the audit. Based on these conclusion, the Secretary rejected the Hearing Officer's recommendation and affirmed the Department's determination that Petitioner was overpaid in the amount of $1,251,867.58.
* * * * * *
The primary issue for our consideration is whether the burden of proof for establishing entitlement to payment amounts rests with the Cabinet or the provider. The Cabinet asserts that the Secretary correctly assigned the burden of proof to the provider, and that the Franklin Circuit Court erred in failing to so rule. The Cabinet's argument centers on its claim that since a provider who enters into a Provider Agreement understands that payments made to the provider are subject to a later audit, such payments are therefore not final payments. As such, the Cabinet contends that because these payments are not final until the audit occurs and a reconciliation has been made, the Cabinet has provided no actual benefit to the provider. Under the Cabinet's reasoning, the burden of proof in a KRS 13B administrative hearing must be on the provider claiming to be entitled to benefits.
Kentucky Administrative Regulation 907 KAR 1:671 § 9(14) provides that " KRS 13B.090(7) shall govern the burdens of proof." KRS 13B.090(7) places the burden on an agency to "show the propriety of a penalty imposed or the removal of a benefit previously granted ." (Emphasis added.) This language is clear and unambiguous, and subject to but one reasonable interpretation. It is the agency which has the burden of proof to recover benefits paid, even when subject to an audit. In addressing the Cabinet's argument that no benefit has technically been confirmed to the provider due to the nature of the Medicaid program's expedited payment schedule and the provider's agreement to have these amounts subject to audit, the Franklin Circuit Court found it to be "an unavailing legal fiction." We agree with this characterization, as the General Assembly left no doubt but that burden of justifying the removal of a benefit previously granted rests solely with the Cabinet.
When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc. , 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (footnotes omitted).
In the matter before us, the General Assembly "has directly spoken to the precise question at issue", and as its intent is clear, "that is the end of the matter[.]" Id.
*873 The Franklin Circuit Court properly determined that the burden of proof rested with the Cabinet, and we find no error.
The Cabinet also argues that its use of extrapolation as a Medicaid audit tool for recovery of benefits paid is authorized by regulation, and that it was improper for the Hearing Officer to exclude the extrapolated amounts from the hearing. It maintains that the precise methodology for extrapolation need not be set forth in the regulation, as extrapolation audits have been found to comport with due process when providers are allowed to introduce rebuttal evidence at a hearing challenging the sampling model or accuracy of the results. Additionally, the Cabinet argues that the plain language of 907 KAR 1:671 expressly provides for extrapolation, and it directs our attention to Commonwealth v. EPI Corp. , 2006-SC-000348-DG, 2008 WL 5274857 (Ky. Dec. 18, 2008), which interpreted the twenty-one-month limitation in 907 KAR 1:110 § 3 as applying in all circumstances, not just "exceptional hardship circumstances," as the title of that Section reads.
In examining this issue, the Franklin Circuit Court entered into a complex analysis of the definition of "Unacceptable Practice" in 907 KAR 1:671 § 1(40), and the inclusion of "Provider Abuse" as defined by KRS 205.8451(8) to include any and all billing errors that "result in unnecessary cost to the Medical Assistance Program[.]" Ultimately, the Court held that the use of extrapolation methods provided for in 907 KAR 1:671 § 3(7) applies only to that Section , the purpose of which is to enable the Cabinet to identify unacceptable practices and to refer appropriate cases to the Medicaid Fraud and Abuse Control Unit or the Office of the United States Attorney. That is to say, the extrapolation provisions of 907 KAR 1:671 § 3(7) may not be applied for recovery of benefits paid through a Medicaid audit pursuant to 907 KAR 1:671 § 2. This conclusion is supported by the record and the law. The KAR restricts the usage of extrapolation to findings of unacceptable practices and referrals for fraud inquiries, and may not be employed broadly to come to an exact amount deemed to be overpaid to a provider. We find no error.
Lastly, the Cabinet argues that Secretary properly determined that the Optum employee's testimony as an expert was permitted by Kentucky Rules of the Supreme Court (SCR) 3.130 (3.4). In support of this argument, the Cabinet maintains that under the Patient Protection and Affordable Care Act, contingency fees are allowed, and the CMS-approved States Plan Amendment in Kentucky creating the RAC program requires the contingency-fee basis for collecting overpayments. Further it contends that contingency fees do not improperly incentivize RACs. Ultimately, the Cabinet argues that courts must give great deference to determinations made by agencies through the regulatory process, and that such deference to the Secretary supports the decision to allow Optum's employee's testimony as an expert witness.
The federal registry addresses the allowance of experts contracted into provider agreements.[3] It does not, however, contemplate contracted contingency fee third parties being admitted as "expert witnesses" under state evidentiary rules. We agree with the Franklin Circuit Court that the cited regulations do not preempt local evidentiary rules. In the matter below, the Hearing Officer excluded the expert testimony in question based on SCR 3.130. The Franklin Circuit Court properly determined *874 that this reasoning was correct, and we find no error.
The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. KRS 13B.150(2). It may affirm or reverse the final order, however, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
(a) In violation of constitutional or statutory provisions;
(b) In excess of the statutory authority of the agency;
(c) Without support of substantial evidence on the whole record;
(d) Arbitrary, capricious, or characterized by abuse of discretion;
(e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2) ; or
(g) Deficient as otherwise provided by law.
Id. The Court is to review an agency's conclusion of law de novo. Kentucky Retirement Systems v. Bowens , 281 S.W.3d 776, 780 (Ky. 2009).
The Franklin Circuit Court found that the Cabinet acted arbitrarily and outside the scope of its authority by using uncodified methods of extrapolation when addressing the alleged overpayments, applied the incorrect rule of law when determining the proper role of SCR 3.130 (3.4), and rendered a decision in a final order that was not supported by substantial evidence in the record. These conclusions are supported by the record and the law, and accordingly we AFFIRM the opinion and order of the Franklin Circuit Court reversing the cabinet's final order.
ALL CONCUR.

The current Secretary of the Cabinet for Health and Family Services is Adam Meier.

42 U.S.C. § 1396a(a)(42)(B)(i) ; (42)(B)(ii)(I)-(II).