**KENTUCKY RETIREMENT
SYSTEMS, Appellant**

v.

**Roger WEST, Appellee.**

**No. 2011–SC–000471–DG.**

Supreme Court of Kentucky.

Aug. 29, 2013.

Rehearing Denied Dec. 19, 2013.

Jennifer A. Jones, Katherine I. Rupinen, Leigh Ann Jordan, Brian C. Thomas, Joseph Patrick Bowman, Jennifer Ann Steele, Christopher Louis Tapia, Counsel for Appellant.

Thomas Wayne Moak, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Appellee, Roger West, was employed as a plant operator by the City of Middlesboro when he filed for disability retirement benefits as a member of the County Employees Retirement Systems on November 23, 2005. He began working at the city's water treatment facility in 1991, though he had periodically been employed by various state and local entities prior to this date. His last date of paid employment was December 18, 2005.

He based his application on a work-related back injury, as well as "breathing problems." He cited exposure to chemicals at the facility and his diagnosis of chronic obstructive pulmonary disease ("COPD") as the basis of the breathing problems. Included in his medical records are additional diagnoses of seizure disorder, sleep apnea, degenerative joint disease, hypertension, hypercholesterolemia, and hyperthyroidism. His application was reviewed by three independent medical examiners, all of whom recommended denial of disability retirement benefits.

West then requested and received an administrative hearing. The testimony and medical evidence submitted confirmed that West's COPD was a direct result of his lengthy and chronic use of tobacco, not exposure to chemicals. Further, the physicians agreed that West is 100% disabled as a result of severe COPD, though not permanently because he would experience relief of symptoms were he to cease smoking.

With respect to his back injury, the examining physicians agreed that there was no permanent impairment. Also, the hearing officer concluded that West failed to produce any convincing evidence to establish that his back injury did not pre-date his employment date. Accordingly, the hearing officer also recommended denial of benefits. On appeal, the Disability Appeals Committee adopted the hearing officer's report and recommended order.

West then appealed this final administrative decision to the Franklin Circuit Court, which affirmed the decision of the Disability Appeals Committee. He appealed the circuit court's decision to the Court of Appeals, which reversed and remanded. The Court of Appeals concluded that the hearing officer had failed to consider the cumulative effect of West's various impairments. The Court of Appeals also determined that the hearing officer improperly considered West's chronic tobacco use as a "pre-existing condition."

Appellant, Kentucky Retirement Systems (the "Systems"), then moved this Court for discretionary review, which was granted. We remanded the matter to the Court of Appeals for reconsideration in light of our decision in *Kentucky Retirement Systems v. Brown*, 336 S.W.3d 8 (Ky.2011). On remand, the Court of Appeals reached the same result. Relying on *Brown*, the Court of Appeals reaffirmed that smoking is not a "condition" within the meaning of KRS 61.600(3)(d). Further, it again remanded the matter for determination of whether the combined effect of West's impairments rendered him unable to return to his former position or like positions.

The Systems then filed a second motion for discretionary review, which was again granted by this Court. For the reasons set forth herein, we reverse the Court of Appeals' opinion.

### Burden of Proof

West applied for disability benefits pursuant to KRS 61.600, which requires a showing that "[t]he incapacity does not result directly or indirectly from bodily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent." In all administrative hearings, the party seeking a benefit bears the burden of proof, and must satisfy this burden by a preponderance of the evidence. KRS 13B.090(7). To be sure, the pre-existing condition requirement contained in KRS 61.600(3)(d) is not a "full-scale affirmative defense," so as to shift the burden of proof to the Systems. *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 458 (Ky.App.2003). Rather, West properly bore the burden of proof in establishing that his COPD was not a pre-existing condition.

The Court of Appeals concluded that West had satisfied his burden of proving that the COPD was not a pre-existing condition. In a series of three arguments, the Systems attacks this conclusion, as well as the burden of proof applied by the Court of Appeals. We agree that the Court of Appeals erred.

The Court of Appeals recognized that West bore the burden of proof in establishing that his COPD was not the result of a pre-existing condition, but went on to dis-

cuss the quantum of evidence necessary to satisfy this burden:

> Thus, we find the proper interpretation of the statute to be that a claimant bears the burden to come forward with *some evidence* that his condition did not pre-exist his service with the Commonwealth. Upon such a threshold showing, the burden of going forward shifts back to the Systems. While the ultimate burden of persuasion is not moved from the party upon which it was originally cast (the claimant), the Systems must come forward with some evidence in rebuttal where a claimant makes a threshold showing that his or her condition was not pre-existing. While we agree with the Systems that the fact-finder is free to accept or reject any evidence it chooses, it is not free to reject *uncontested* evidence. (Emphasis in original).

■ We cannot agree with this interpretation of the claimant's evidentiary burden. KRS 13B.090(7) plainly states that the claimant bears the burden of proving his entitlement to a benefit by a preponderance of the evidence. In claims brought under KRS 61.600, this includes the burden of establishing that the condition did not exist at the time the claimant became a member of the Systems. There is nothing in either statute to support the conclusion that the claimant must only make a threshold showing. The Systems may or may not present evidence to rebut the claimant's proof. Regardless, the burden does not shift to the Systems.

In fact, this case demonstrates precisely why the Court of Appeals' scheme is untenable. West bore the burden of establishing that his COPD did not pre-date his reemployment. While the evidence presented by West might be considered a "threshold showing," it certainly does not amount to a "preponderance of the evidence" as required by KRS 13B.090(7).

Further, the Court of Appeals broadly states that the hearing officer may not reject uncontested evidence. On the contrary, the Systems does not bear the burden of proof and may choose not to challenge evidence it deems unconvincing. The sufficiency of the claimant's showing is not wholly calculated by whether or not the Systems presents evidence in rebuttal.

■ We thus evaluate whether West satisfied his burden of proving, by a preponderance of the evidence, that his COPD did not pre-exist his membership in the Systems. "Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it." *McManus*, 124 S.W.3d at 458. Great deference is afforded the determinations made by the administrative factfinder. *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972).

The record is unclear as to the onset of West's COPD. West stated that he first experienced breathing problems a year or two before his last date of employment, December 31, 2005. Yet, medical records indicate that West was diagnosed with COPD as early as 1998. Those medical records, however, do not contain the results of the exams supporting this diagnosis.

West did not present any medical records pre-dating 1998. This is because his primary care physician retired and all medical records that went unclaimed after 2004 were destroyed. Dr. Westerfield examined West in 2006 concerning his respiratory injury claims and concluded that he suffered from severe COPD caused by tobacco use. Evaluations by three other physicians in 2006 confirmed the severe and advanced nature of West's COPD.

During the only portion of his testimony directly related to the onset of West's COPD, Dr. Westerfield explained that the injuries to West's lungs have been accumulating over a thirty-year period. When directly asked about a possible onset date of COPD, Dr. Westerfield provided the limited opinion that West did not suffer from the same level of pulmonary impairment in 1991 that he did in 2007. The relevant portion of Dr. Westerfield's testimony is as follows:

Q: Doctor, the type of pulmonary disability that he has, is that based on objective medical evidence?

A: Very much.

Q: And do you have an opinion as to when the disability began or when he would have been considered disabled? This is 2007. Is this something that would be present—I guess I'm asking a hard question, but when do you think the onset or the start of his disability would have been?

A: It would be difficult for me to answer that, because he really didn't come under medical treatment until Dr. Baker saw him in September.

Q: Let me ask in a different way. Is it unlikely that he would have had that degree of pulmonary impairment when he started working for his last employer?

A: In 1991?

Q: Right.

A: I think it would be very unlikely that he would have had this pulmonary impairment in 1991.

He did not provide an opinion as to when West might have started exhibiting symptoms of COPD, nor was the doctor asked whether it was likely that West would have experienced some degree of COPD in 1991.

In short, there was no direct evidence concerning the onset date of West's COPD. Dr. Westerfield's opinion that West's level of impairment would not have been the same in 1991 as it was in 2007 is hardly surprising, given the progressive nature of the disease. Further, all examining physicians agreed that West's COPD is severe and directly caused by his tobacco use. According to West's own statements, by the time he began employment in 1991, he had been smoking at least three packs a day for at least twelve years. Given these circumstances, there is simply no way to determine whether West suffered from some level of COPD in 1991.

Contrary to West's assertions on appeal, this case is distinguishable from *Brown, supra.* In *Brown,* we concluded that smoking or tobacco use is a behavior, not a "pre-existing condition" within the meaning of KRS 61.600(3)(d). Like West, Brown suffered from COPD which was caused by tobacco use. The Systems denied her claim, based upon the admission that she used tobacco for thirty years, beginning well before her membership date.

However, unlike the present matter, Brown offered a "plethora of evidence" that, while her smoking habit pre-existed her membership in the Systems, her COPD did not. *Brown,* 336 S.W.3d at 11. Medical records indicated that she showed no signs of COPD during an evaluation conducted one year after her employment date. Further, a medical expert opined that onset occurred approximately four years after her membership date. Finally, she presented medical records demonstrating that her first firm diagnosis of COPD occurred nine years after her membership date.

West never established when he began to suffer from COPD. While we recognize West's difficult circumstance with respect

to his destroyed medical records, we cannot relax the burden of persuasion in response. To do so would encourage concealment of relevant medical records by claimants. The hearing officer was presented virtually no evidence upon which to conclude that West's COPD was not a preexisting condition. As such, the hearing officer's conclusion was reasonable and must be affirmed.

### Cumulative Effect

■ The Court of Appeals remanded West's case to the hearing officer for a determination of whether the combined effects of West's impairments rendered him unable to return to his former position or like positions. The Systems argues that this conclusion is erroneous, as the record reflects that the hearing officer did consider the cumulative effect of West's impairments. Additionally, the Systems argues that this issue is not properly preserved for appellate review.

We agree with the Systems that this issue was not properly preserved for judicial review. West did not raise the cumulative effect argument in his exceptions, which preserves administrative decisions for judicial review. *See Rapier v. Philpot,* 130 S.W.3d 560, 563 (Ky.2004). Nonetheless, because the Franklin Circuit Court considered cumulative effect, we will briefly address the issue.

■ We agree with the Franklin Circuit Court that the hearing officer did, in fact, consider the combined effect of West's impairments as implicitly required by KRS 61.600. *See Kentucky Retirement Systems v. Bowens,* 281 S.W.3d 776, 784 (Ky. 2009). Because his application was based on a back injury and pulmonary impairment, it is natural that the hearing officer would initially address these impairments individually. However, the hearing officer's findings of fact and conclusions of law reference West's "COPD and back pain" and his "back condition and pulmonary condition" in conjunction. Furthermore, the hearing officer's report acknowledges West's additional diagnoses of seizure disorder, sleep apnea, degenerative joint disease, hypertension, hypercholesterolemia, and hyperthyroidism. We agree with the Franklin Circuit Court that the hearing officer addressed all medical records presented and based its decision on the totality of the evidence.

### Conclusion

The opinion of the Court of Appeals is hereby reversed and the judgment of the Franklin Circuit Court is affirmed.

MINTON, C.J., ABRAMSON and VENTERS, JJ., concur. SCOTT, J., dissents by separate opinion in which KELLER and NOBLE, JJ., join.

SCOTT, J., dissenting:

I must respectfully dissent from the majority's opinion for reasons that it untethers "pre-existing diseases and conditions" from its intended foundation. Moreover, it implicitly, if not directly, overrules our own unanimous precedent from two years ago, *Kentucky Ret. Sys. v. Brown,* 336 S.W.3d 8, 15 (Ky.2011)("We do not believe it the intent of the legislature in drafting KRS 61.600 to deny benefits to those individuals who suffer from unknown, dormant, asymptomatic diseases at the time of their employment....."). This untethering will hurt innocent working people who were otherwise honestly entitled to disability retirement under KRS 61.600 as envisioned by the Kentucky legislature.

In so dissenting, I must note that the Franklin Circuit Court, the Court of Appeals, and all of my colleagues agree that the Appellee, West, is clearly disabled by his chronic obstructive pulmonary disease

(COPD).[1]  Only the hearing officer and the Board of Trustees of the Kentucky Retirement System (the Board), upon her recommendation, disagreed.

Their disagreement, however, was predicated upon an improper legal premise that "[c]learly, [West] has failed to meet his burden of proving COPD is not directly or indirectly caused by a condition [, smoking,] which pre-dates his membership in the Kentucky Retirement System."[2] Hearing Officer's recommendations and opinion at 9.

This assumption—that the underpinnings of COPD began at some unknown time in this 28–year smoking history, *but before West's 15.5–year employment under the system, starting in January 1991*—is not only conjecture and speculation, but it also ignores our clear pronouncement in *Brown*, to wit:

> [W]e ... believe it necessary in this case to note why the legislature chose to exclude disability retirement benefits to individuals who have "pre-existing" conditions.  We believe it clear that the legislature's intention was to prevent a fraud on the retirement systems, to prevent individuals from knowingly and intentionally filing for disability benefits based on conditions predating their enrollment.  The Kentucky Retirement Systems was created to provide its employees with a safety net such that in the event they are injured or succumb to a disease while in the employment of the State, they are insured with disability retirement benefits.

Importantly, we do not believe it was the intent of the legislature to define as "pre-existing" those diseases and illnesses which lie dormant and are asymptomatic such that no reasonable person would have realized or known of their existence.  This is particularly so given the fact that some diseases are genetic and may not surface for many years.  Indeed, were we to analyze whether a genetic condition pre-exists membership in the Kentucky Retirement Systems, our conclusion would always be "yes"

---

1.  The majority acknowledge that "all examining physicians agreed that West's COPD is severe."  Op. at 582. In another instance, they acknowledge, "[f]urther, the physicians agreed that West is 100% disabled as a result of severe COPD," but go on to assert, illogically, "though not permanently because he would experience relief of symptoms were he to cease smoking," a statement contrary to medical science.  In fact, once you have it, "[t]here is no cure for COPD." National Institutes of Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/pmh0001153/ (last visited July 30, 2013).  COPD has no cure yet, and doctors do not know how to reverse the damage to the airways and lungs.  However, treatments and lifestyle changes can help you feel better [in whatever stage you are in], stay more active, and slow the progress of the disease.  National Institutes of Health, http://www.nhlbi.nih.gov/health/health-topics/topics/copd/treatment.html/ (last accessed July 30, 2013).

2.  It should be noted that the hearing officer made this finding in 2007, four years before *Brown*.  Notably, however, Appellant, KERS, makes my point very well on page 8 of its brief, to wit:

> Appellee has a long history of 30 years of significant tobacco abuse that pre-exists his reemployment date and directly resulted in his COPD, as his own doctors stated.  Notably, *all* of the medical evidence indicated that this was the cause of his complaints and *no* provider opined that the COPD was caused by anything else.

> As diagnosed by Dr. Moore, tobacco abuse is a known disease, which is distinguishable from Ms. Brown's history of the behavior of smoking.  This Honorable Court's decision in Brown focused on the term "condition" in the statute, not any of the other terms contained in KRS 61.600(3)(d).  Tobacco abuse is not merely a condition; it is a diagnosable disease, causing a physical injury, not simply a behavior.

given the fact that our genes are composed long before employment. However, our common sense approach guides us in the opposite direction and once again aligns this Court with the maxim that courts should construe a statute according to its plain meaning, unless that meaning leads to an absurd result which is contrary to the intent of our legislative authority. *Johnson v. Branch Banking & Trust Co.*, 313 S.W.3d 557, 559 (Ky.2010). To allow the Kentucky Retirement Systems to deny disability retirement benefits based on the notion that a genetic disease, rooted in one's DNA, is pre-existing regardless of whether that disease is symptomatic prior to enrollment certainly qualifies as an absurd conclusion and would clearly defy the legislative intent of KRS 61.600.

We believe it the intent of our legislative authority to preclude from benefits those individuals who suffer from symptomatic diseases which are objectively discoverable by a reasonable person. We do not believe it the intent of the legislature in drafting KRS 61.600 to deny benefits to those individuals who suffer from unknown, dormant, asymptomatic diseases at the time of their employment, ailments which lie deep within our genetic make-up, some of which may not yet be known to exist.... Why else would the legislature have referred to "objective medical evidence" in KRS 61.600(3)? *See* KRS 446.015 ("All bills ... shall be written in nontechnical language and in a clear and coherent manner using words with common and everyday meaning.").

*Kentucky Ret. Sys. v. Brown*, 336 S.W.3d 8, 15 (Ky.2011).

The term "pre-existing disease or condition" had its genesis in insurance disability issues of earlier times. There, in an effort to prevent fraud by concealment, insurers formerly excluded coverage for sickness or illness originating or commencing before the effective date of the policy. However, they failed to expressly define the term, preexisting condition. This resulted in judicial determinations throughout the United States that this terminology was ambiguous and strictly construing it against insurers by adopting the general rule a sickness or "illness is deemed to have its inception when it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the illness." (Annot., Health Policy—Exclusion of Prior Illness (1979) 94 A.L.R.3d 990, 998; Meyer, Life and Health Insurance Law (1972) § 17:4, p. 551; see *Rozek v. American Family Mut. Ins. Co.* (Ind.Ct.App.1987) 512 N.E.2d 232, 236; *American Family Ins. Group v. Blake* (Ind.Ct.App.1982) 439 N.E.2d 1170, 1173–1174; *Mutual Hospital Insurance, Inc. v. Klapper* (1972) 153 Ind.App. 555 [288 N.E.2d 279, 281–282]; *Dirgo v. Associated Hospitals Service, Inc.* (Iowa 1973) 210 N.W.2d 647, 650 (emphasizing third alternative); *State (Comp. Health Plan) v. Carper* (Miss. 1989) 545 So.2d 1, 2–3; *Doe v. Northwestern Nat. Life Ins. Co.* (1987) 292 S.C. 241 [355 S.E.2d 867, 869].) It has been said this majority rule "serves the dual purpose of protecting insurers from fraudulent applicants seeking coverage for known diseases while protecting innocent premium-paying insureds from being deprived of benefits for pre-existing conditions of which they have no knowledge." (*Mutual Hospital Insurance, Inc. v. Klapper, supra*, 288 N.E.2d at p. 282.) However, it is in the disjunctive, setting forth at least three alternative standards for defining when a sickness exists, the latter two of which may not involve the insured's "subjective"

awareness, to wit: when it is active or displays sufficient symptoms from which a physician could make an accurate diagnosis. (*American Family Ins. Group v. Blake, supra,* 439 N.E.2d at p. 1172; *Hannum v. General Life and Acc. Ins. Co.* (Tex.Ct.App.1988) 745 S.W.2d 500, 501–502.) In any event, "[m]ost cases have adopted the majority rule apparently on the basis that while insurance companies need protection from unscrupulous applicants who would fraudulently attempt to gain coverage for an illness of which they are already aware, such protection need not go so far as to consider a disease to exist at the time of its medical inception. Furthermore, to consider a disease to exist at a time when the victim is blissfully unaware of the medical 'seeds' visited upon his body, is to set a trap for the unwary purchaser of health insurance policies." (*Mutual Hospital Insurance, Inc. v. Klapper, supra,* 288 N.E.2d at p. 282.)

*Mogil v. California Physicians Corp.,* 218 Cal.App.3d 1030, 1037–38, 267 Cal.Rptr. 487 (1990) (footnote omitted).

A subsidiary rule also arose, to wit: "A condition, not otherwise diagnosed, is manifest when the insured knew or should have known of the existence of his illness because he was experiencing symptoms that would lead a reasonable person to seek a medical diagnosis." *Am. Sun Life Ins. Co. v. Remig,* 482 So.2d 435, 436 (Fla. Dist.Ct.App.1985).

As noted in *Brown, supra,* the application of like concepts to disability determinations is mandated by the legislature's instruction that such determinations be made only from "the examination of the objective medical evidence . . . ." *Brown,* 336 S.W.3d at 10 n. 2; KRS 61.600(3).[3] This directive is likewise applicable to the determination of a pre-existing disease or condition. KRS 61.600(3)(d).

Moreover, such determinations must be based on "substantial evidence." [4] KRS 61.665(3)(d) ("A final order of the board shall be based on substantial evidence appearing in the record as a whole and shall set forth the decision of the board and the facts and law upon which the decision is based.").

The error the majority perpetuates is the presumption that the minute daily (and annual) damage from smoking (and/or any other behavior) constitutes a "pre-existing condition" even when the effects of such are unquantifiable to the recipient, unknown at the time, and undiagnosable via objective medical evidence to the medical practitioner; i.e., the end result mandates a beginning degeneration which constitutes the disqualifying "pre-existing condition." [5]

---

3. It is important to one's understanding of the process and the claimant's circumstances here to note that the legislature saw fit to relieve claimants from the onus of pre-existing disabilities and conditions upon the attainment of sixteen years' service. KRS 61.600(4)(b). West had 15.5 years' service.

4. Substantial evidence is defined as "being evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Kentucky State Racing Comm'n v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972) (*quoting O'Nan v. Ecklar Moore Exp., Inc.,* 339 S.W.2d 466, 468 (Ky.1960)). "The test of substantiality of [the] evidence is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Fuller,* 481 S.W:2d at 308 (*citing Blankenship v. Lloyd Blankenship Coal Co.,* 463 S.W.2d 62 (Ky. 1970)).

5. That one beginning is good, i.e., running for better health, which, of course, leads ultimately to disabling joint injuries, and others, i.e., drinking, overeating, or smoking, are bad, but also lead to disabling conditions, should be irrelevant to this logic, one would think.

COPD refers to a group of diseases that cause airflow blockage and breathing-related problems. It includes emphysema, chronic bronchitis, and, in some cases, asthma. In its clinical evaluation and diagnosis, the volume of air exhaled in a pulmonary function test by a person in a one-second forced exhalation is called the forced expiratory volume ($FEV_1$), measured in liters. The total exhaled breath is called the forced total capacity (FVC) and is also measured in liters. "Because of lung damage, people with COPD take longer to blow air out. This impairment is called obstruction or airflow limitation. An $FEV_1$ less than 70% of FVC can make the diagnosis of COPD in someone with compatible symptoms and history." Web MD, http://www.webmd.com/lung/copd/gold-criteria-for-copd/ (last visited July 31, 2013). Depending on the $FEV_1$ result (from 80% of normal FVC down to less than 30% of normal), it can be classified as Stage I on down to the most severe category, Stage IV. *Id.* "Fifteen million Americans report they have been diagnosed with COPD. Yet, more than 50% of adults with low pulmonary function *were not aware* that they had COPD; therefore, the actual number [is] higher." Centers for Disease Control, http://cdc.gov/copd/ (last visited July 31, 2013) (footnotes omitted) (emphasis added).

Here, it is uncontradicted that the Appellee, West, was treated by primary care physician, Dr. Robert Matheny, prior to the doctor's retirement. In Kentucky, a retired physician has to bear the burden and expense of retaining adult patient records for a period of ten years following retirement. Thus, Appellee submitted a letter at the hearing from Dr. Matheny stating "[m]y office has been closed for 10 years. All those records that were not picked up were destroyed in 2004."[6] He was then followed by primary care physician, Dr. Moore, beginning in 1998. Dr. Moore's office notes reflect his diagnosis of Appellee's COPD in 1998.[7]

To put this in perspective, Appellee started his employment under the system in January 1991 and worked his last day as such on December 18, 2005. He then filed his application for disability benefits—15.5 years after he started work. To me, it just seems "kinda edgy" to assume one would—or could—work as a plant operator in a waste water plant for 15.5 years *with active COPD.*

My view aside, the only physician that directly addressed the issue of the onset of West's COPD was Dr. Westerfield in 2007. He opined that West was totally disabled due to his severe COPD. Moreover, when asked "[i]s it unlikely that he would have had that degree of pulmonary impairment when he started working [in 1991?]," he specifically responded, "I think it would be

---

**6.** This loss of records due to Dr. Matheny's retirement long before the ultimate diagnosis of COPD seems to be fueling an undercurrent of suspicion that Appellee was withholding, or had managed the loss of supposedly damaging medical records from earlier years. However, an analysis of the fact that the Appellee filed his claim many, many years following Dr. Matheny's retirement along with the additional fact that, were he truly concerned about any allegedly non-existent earlier diagnoses being discovered (as you would think they would), *he could have just worked six more months and been totally relieved of the*

*"pre-existing condition" limitations,* KRS 61.600(4)(b), should put such unfounded suspicions to rest.

**7.** The parties strongly disagree as to whether these records do reflect any diagnosis of COPD. Yet, its notation is there, possibly as a differential diagnosis or suspicion. This, of course, was seven years after West's beginning employment date. At any rate, how many employees think to save their prior medical records years before they get sick and retire?

very unlikely that he would have had *this pulmonary impairment in 1991.*" (Emphasis added.) The majority recites this answer using the wording "this *level* of pulmonary impairment." (Emphasis added.) However, his precise answer was "this pulmonary impairment." Of course, doctors do not always answer the precise question asked, and given the exact wording of his answer along with knowledge of the findings necessary to diagnose COPD,[8] I read this answer as pointing out it would be *very* unlikely he had COPD in 1991.

In summary, the evidence considered on the issue of the pre-existence of West's COPD was essentially the following:

1. West worked under KERS from January 1991 until late-December 2005.

2. He had a smoking history of 28 years.

3. The record supports that he was diagnosed with COPD by his primary care physician, Dr. Moore, in 1998.

4. All the physicians, except possibly Dr. Strunk,[9] opined he was totally disabled by his COPD which was caused by his smoking.

5. West testified he experienced breathing difficulties a year or two before his last day of work.

6. West's treating physician prior to Dr. Moore, was Dr. Matheny. Dr. Matheny's remaining records had been destroyed in 2004, following Dr. Matheny's earlier retirement.

Thus, they were not available for review, and his letter so stated.

7. Dr. Westerfield testified in 2007 that "it would be very unlikely that [West] would have had this pulmonary impairment in 1991."

In this instance then, the Appellee, West, established that he was totally disabled by COPD, that it was caused by his 28 years of smoking, that he was diagnosed with it in 1998, seven years after he started working, and that it "was very unlikely that he had this pulmonary impairment in 1991."

Given our pronouncement in *Brown* that smoking is a behavior rather than a condition (or a disease), *Brown,* 336 S.W.3d at 16, proof only of smoking prior to employment is not proper proof of the pre-existence of a disease or condition at any particular time prior to one's employment. There was no other evidence of consequence.

Admittedly,

the party proposing the agency take action or grant a benefit has the burden to show the propriety of the agency action or entitlement to the benefit sought.... The party asserting an affirmative defense has the burden to establish that defense. The party with the burden of proof on any issue has the burden of going forward and the ultimate burden of persuasion as to that issue. The ultimate burden of persuasion in all administrative hearings is met by a preponderance of evidence in the record. Failure to meet the burden of proof is grounds

---

8. A diagnosis of COPD, however, generally requires pulmonary function testing by spirometry and/or arterial blood gas analysis. At times, it can be done by x-ray or CT scan. Mayo Clinic, http://www.mayoclinic.com/health/copd/ds00916/dsection=tests-and-diagnosis/ (last visited July 31, 2013). Generally, these tests are performed outside the

primary care physician's office and their existence—if not kept by the institution performing them—could be documented by insurance payments. Of course, if they were not done, no such records would exist.

9. Dr. Strunk thought his pulmonary problem could possibly be due to acute pneumonia.

for a recommended order from the hearing officer.

KRS 13B.090(7).

And, we have also noted:

"[w]hen the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the. minds of reasonable people. Where the factfinder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in the party's favor is so compelling that no reasonable person could have failed to be persuaded by it."

*Brown,* 336 S.W.3d at 14–15 (*quoting McManus v. Kentucky Ret. Sys.,* 124 S.W.3d 454, 458 (Ky.Ct.App.2003)). And where the Kentucky Retirement Systems, in its role as a finder of fact, makes a factual determination based upon objective medical evidence, it must be afforded "great latitude in its evaluation of the evidence heard and the credibility of witnesses ..." including its findings and conclusions of fact. *Brown,* 336 S.W.3d at 14 (*quoting Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972)).

Yet, in these analyses, we cannot ignore that "[a] final order of the board shall be based on substantial evidence appearing in the record...." KRS 61.665(3)(d). "The search for substantial evidence is thus a qualitative exercise without which our review of ... disability cases ceases to be merely deferential and becomes instead a sham." *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983).

Given that the bare behavior of smoking is simply not appropriate proof of the existence of a particular measureable condition or disease existing on any specific date, *Brown,* 336 S.W.3d at 15, there is simply no evidence, other than sheer speculation, that West's COPD pre-existed his employment date. Thus, the only preponderance of evidence was that shown by West. His being the only evidence adduced on the subject, it must necessarily be compelling based on the absence of any countervailing evidence.

Thus, I strongly dissent, and would uphold *Brown* and affirm the opinion of the Court of Appeals. Hopefully, we have not yet reached the point in law when we let unknown and unascertainable predictions of science turn honest human behavior and life-long retirement expectations into scientific fraud.

KELLER and NOBLE, JJ., join.