RENDERED:  MAY 29, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0658-MR

KENTUCKY PUBLIC PENSIONS
AUTHORITY ON BEHALF OF THE
JOINT DISABILITY APPEALS
COMMITTEE OF KENTUCKY
RETIREMENT SYSTEMS AND
COUNTY EMPLOYEES
RETIREMENT SYSTEM                                                    APPELLANT


APPEAL FROM FRANKLIN CIRCUIT COURT
v.        HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 20-CI-00383


CLIFFORD GRINNINGER                                                  APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, ECKERLE, AND MOYNAHAN, JUDGES.

COMBS, JUDGE:  This case involves a dispute about an award of retirement

disability benefits to a disabled retiree of the Newport Independent School District.

The Appellant is the Kentucky Public Pensions Authority on Behalf of the Joint

Disability Appeals Committee of Kentucky Retirement Systems and County

Employees Retirement System (KPPA or Retirement System). The KPPA seeks to reverse the Opinion and Order of the Franklin Circuit Court of April 28, 2025, which reversed the decision of the Kentucky Retirement Systems Board of Trustees (the Board). The Board had denied retirement disability benefits to the Appellee, Clifford Grinninger (Grinninger). In its analysis of the Board's decision, the Franklin Circuit Court based its reversal on lack of substantial evidence to support denial of benefits. We agree with the sound reasoning of the circuit court. Therefore, we affirm.

## I.    Factual and Procedural History

Grinninger was employed as a custodian for the Newport Independent School District for almost 22 years. His job was physically demanding, requiring him to stand up to seven hours a day. Over the course of his employment, Grinninger maintained the buildings and grounds of multiple schools. In order to carry out his job properly, Grinninger was required to perform the following tasks: handle, grab, and grasp items, tools, and machinery, including vibratory equipment; climb and balance; lift and carry objects weighing between 25 and 50 pounds without assistance; reach overhead and in all other directions; and be exposed to environmental elements, fumes, and dust. Administrative Record (A.R.) at 8-11, 12-13.

As an employee of a school board, Grinninger was a member of the County Employees Retirement System (CERS) from April 30, 1996, until his last date of paid employment (LDOPE) on March 5, 2018. A.R. at 7. He has not worked since leaving his custodial position. At the age of 57, Grinninger applied for and was awarded Social Security Disability benefits with a disability onset date of April 4, 2018. On April 5, 2018, Grinninger applied to the Kentucky Retirement Systems (Retirement System)[1] for disability retirement benefits pursuant to Kentucky Revised Statute (KRS) 61.600. A.R. at 2-7. Having more than 16 years of participating service, Grinninger was not barred from receiving disability benefits for a pre-existing condition. KRS. 61.600(4)(b).

In his Statement of Disability, Grinninger indicated that he suffers from multiple conditions, including: degenerative disc disease; radicular osteoarthritis of his lumbar, thoracic, and cervical spine; pain and numbness in his right leg; chronic knee pain; sciatica and back spasms; deafness of the left ear; fibromyalgia; gastroenteritis; anxiety, depression, and dysphoric mood; hypothyroidism; low testosterone; fungal infection; chronic asthma and chronic

---

[1] The CERS and the Retirement System administratively restructured in 2021. The CERS now has its own governance Board of Trustees and Disability Appeals Committee separate from the Retirement System, which governs the Kentucky Employees Retirement System and State Police Retirement System. The KPPA is now the title of the umbrella administrative agency for all the systems. However, when Grinninger's disability claim was administratively adjudicated, the Retirement System was the name of the single agency, which had a single Board that governed all three retirement systems.

obstructive pulmonary disease; high blood pressure; chest pain associated with exertion; gout; myalgia; chronic fatigue syndrome; and a history of foot and ankle surgery. A.R. at 24. He describes chronic back and radicular pain from spinal conditions originating from an automobile accident in 1993 that were then exacerbated over time by subsequent injury and repetitive work. Physicians offered ongoing pain management through a combination of prescription medication and frequent chiropractic care. As a result of these many conditions, Grinninger asserts that he is incapacitated and unable to perform or sustain the essential duties of a custodian. A.R. at 1711.

Pursuant to KRS 61.600(3)[2] and KRS 61.665,[3] the Retirement System's panel of three medical examiners evaluated Grinninger's disability claim and medical records, including Magnetic Resonance Imaging (MRI) of his lumbar and cervical spine in 2015 and 2018, extensive chiropractic treatment notes, emergency medical care summaries, other medical test results, and a list of his prescribed medications. Two medical examiners recommended denial of disability benefits based on the lack of a clear objective statement of disability indicating that Grinninger was permanently disabled or unable to perform the duties of his

---

[2] KRS 61.600 addresses Disability Retirement (eff. to 2021) (amended 2021).

[3] KRS 61.665 refers to Medical Examiners; ruling on disability retirement; appeal; referral for evaluation and training (eff. to 2021) (amended 2021, 2022, and 2024).

custodial job and the insufficiency of "other objective medical evidence." A.R. at 1295-1303. They noted that the record, including his own application, indicated that he had not requested accommodations. *Id.* One medical examiner advised that he "would encourage [Grinninger] to confer with his health care providers and request they provide [the Retirement System] with a clear objective statement of disability," upon which the medical examiner "would be willing to review [his] claim again." A.R. at 1297. The second medical examiner recommending denial observed that Grinninger failed to submit "a functional capacity evaluation [FCE] that would clearly outline his physical capabilities." A.R. at 1303. The third medical examiner recommended approval of disability benefits, finding that Grinninger could not "continue his strenuous employment as a Custodian because of degenerative disc disease of the neck and lumbar spine." A.R. at 1300.

By letter dated November 26, 2018, the Retirement System denied Grinninger's application for disability benefits. A.R. at 1304-12. On April 8, 2019, Grinninger appealed the denial and requested a formal hearing.[4] A.R. at

---

[4] KRS 61.665(2)(f) (eff. to 2021) provided that:

> If two (2) or more of the three (3) medical examiners recommend that the person be denied disability retirement, the system shall send notice of this recommendation by United States first-class mail to the person's last address on file in the retirement office. The person shall have one hundred eighty (180) days from the day that the system mailed the notice **to file at the retirement office additional supporting medical information and certify to the retirement office that the application for disability retirement and supporting medical information are ready to be evaluated by the medical examiners or to appeal his denial of disability retirement by filing at the retirement office a**

1313-14. Grinninger did not seek a reevaluation of additional supporting medical information by the medical panel prior to seeking a hearing.[5] However, along with his hearing request, Grinninger tendered nearly identical narrative statements from his family medicine doctor and chiropractor definitively stating that Grinninger "is permanently incapable of performing the essential functions and duties of a school custodian." A.R. at 1315, 1328.

On October 2, 2019, Grinninger submitted a Residual Functional Capacity Evaluation (FCE) consisting of a checklist signed by his chiropractor and indicating that during an eight-hour workday, Grinninger could: (1) sit, stand, and walk no more than one hour at a time; (2) sit no more than three hours and stand or walk no more than four hours without a break; and (3) lift and/or carry no more than 25 pounds and only occasionally. A.R. at 1347-48. The FCE also reported that Grinninger is unable "to engage in activities requiring frequently sustained neck/head position," unable to climb, and only occasionally able to bend, squat, crawl, or reach. *Id.* The chiropractor noted that Grinninger's functional capacity

_____

**request for a formal hearing**. Any subsequent filing of an application for disability retirement or supporting medical information shall not be evaluated, except as provided in KRS 61.600(2).

(Emphasis added.)

[5] *See* n.5.

-6-

limitations were due to "back pain and cramps" and "right leg pain," and that he "experienced symptoms of polyneuropathy." *Id.*

The Retirement System conducted a hearing on October 14, 2019. The hearing officer entered into the administrative record Grinninger's additional exhibits with no objection by the Retirement System. Grinninger was the sole witness. Video Record of Administrative Hearing (V.R.), 10/14/2019 at 00:03:00. He testified that he was 57 years of age, that he had completed a high school education through the 11th grade, and that he obtained his GED. Grinninger described his former job duties as follows: maintaining school facilities, grounds, and sports fields; standing longer than seven hours a day; medium to heavy lifting; and using heavy machinery. He testified that he had made a verbal request for help with heavy lifting but had not received a response and did not follow-up on his request. V.R. at 00:31:30-00:32:05. Significantly, the two medical examiners who had recommended denying his claim specifically and erroneously reported that he had **not requested** accommodations -- an incorrect fact that was improperly utilized against his claim.

Grinninger testified concerning his diagnosed conditions, surgeries, medications, and treatment. He explained that his symptoms -- including chronic back, neck, and leg pain, radiating pain, and numbness -- originated with the car accident in 1993 but were greatly exacerbated after he pinched a nerve in his back

in 2013. He testified that he experiences constant lower back pain, and that although he can "knock it down" with medication, it never ceases. V.R. at 00:16:20-00:16:41. He described his functions of daily living, which are largely limited to light household chores, grocery shopping, preparing meals, and mowing the yard in shifts with a riding lawn mower. He no longer enjoys former hobbies and does not attend social events or church. On cross-examination, he testified that he provides care for his wife, who has experienced symptoms of dementia since before he left work. However, he is not yet required to assist with her physical care, which she is still able to perform for herself. V.R. at 00:58:50-00:59-45.

After the hearing, the parties submitted post-hearing briefs, and the hearing officer entered his Recommended Order on February 19, 2020. A.R. at 1760-81. In his Recommended Order, the hearing officer summarized the medical evidence, including medical test results, contemporaneous treatment recommendations and notes, and the opinions of the medical examiners. Grinninger's MRI in 2018 and treatment notes just prior to his LDOPE indicated that he was not a candidate for surgery as he continued to demonstrate minimal radicular symptoms and maintained good strength and sensation in the bilateral upper and lower extremities. A.R. at 1630-33. Additionally, comparisons of Grinninger's 2018 MRI to the prior 2015 MRI showed some regression of his bulging disc and only moderate degenerative changes in his cervical spine. A.R. at

-8-

1630-33, 1769. The hearing officer summarized the additional evidence that Grinninger submitted, including the statements from his family doctor and chiropractor, as well as the FCE. The Recommended Order recited that the hearing officer relied on "the entire administrative record . . . and the testimony" in making his findings of fact and conclusions of law. A.R. at 1763.

The hearing officer made findings that Grinninger's custodial position was "best described as medium work," and that Grinninger did not request accommodations. A.R. at 1776. Again, that error was repeated to the detriment of Grinninger's claim. Concerning Grinninger's degenerative disc disease, radicular osteoarthritis, chronic pain, and related conditions, the hearing officer found that Grinninger's doctors: (1) had consistently treated his symptoms conservatively with chiropractic care and prescribed medication; (2) had not recommended him as a candidate for surgery; and (3) while recommending physical restrictions, had not relieved him from work. A.R. at 1776. Therefore, the hearing officer opined:

> For these reasons, Claimant has failed to prove by objective medical evidence that he is permanently incapacitated from his previous job or a job of like duties based on his degenerative disc disease, radicular osteoarthritis, pain and numbness in the left leg, arthralgia, chronic joint pain, myalgia, chronic pain, sciatica, and back spasms.

*Id.* Similarly, in addressing the other alleged conditions, the hearing officer determined that Grinninger had failed to prove by a preponderance of objective

-9-

medical evidence that he was permanently incapacitated as a result of each of them individually. A.R. at 1777-79. Regarding the cumulative effect of these conditions, the Recommended Order concluded:

> Claimant has failed to meet his burden to establish disability based upon the cumulative effect of his conditions. Claimant has been treated conservatively for all of his conditions and has never been considered a candidate for surgical intervention. Some of the conditions for which Claimant has alleged disability significantly pre-date his membership date in the Systems, and while Claimant is not barred from receiving benefits for a pre-existing condition, this shows that Claimant has been able to work with these conditions for the entirety of his almost 22 year employment with the Newport Independent School District. For these reasons, Claimant has failed to meet his burden to establish disability based on the cumulative effect of his conditions.

A.R. at 1779.

On April 28, 2020, the Retirement Systems' Board considered the Recommended Order and, in accordance with KRS 13B.120, issued its final order denying Grinninger's application for disability benefits under KRS 61.600. Record (R.) at 7-8. Pursuant to KRS 61.665(5), Grinninger appealed to the circuit court, which reversed the Board's final order.

## II.  STANDARD OF REVIEW

KRS 13B.150 establishes the standard for judicial review of a final order by an administrative agency and states in pertinent part:

-10-

(1) . . . [R]eview of a final order shall be conducted by the court without a jury and shall be confined to the record . . . .

(2) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is . . . [w]ithout support of substantial evidence on the whole record; [a]rbitrary, capricious, or characterized by abuse of discretion . . . [or] [d]eficient as otherwise provided by law.

KRS 13B.150 (eff. to 2025) (amended Jun. 27, 2025). After the circuit court entered its April 2025 Order, the General Assembly amended KRS 13B.150 as follows:

(3) The court shall apply de novo review of the agency's final order on questions of law. An agency's interpretation of a statute or administrative regulation shall not be entitled to deference from a reviewing court.

*Id.* The General Assembly's amendment has essentially codified relevant case law.

The Retirement System argues that the circuit court "failed to give deference to the fact-finder." Appellant's Brief, p. iii. However, in its recent amendment of KRS 13B.150, the General Assembly unambiguously recognized that an agency's "interpretation " of its own regulations is not entitled to a deference by a reviewing court -- an indorsement of the reality that Section 115 of our Constitution contemplates that an appeal as a matter of right must indeed be

-11-

meaningful, independent, and insightful and not merely a sham or rubber-stamp of the matter under review.

The Kentucky Supreme Court has interpreted KRS 13B.150 as the following mandate:

> [T]he legislative command that the courts "not substitute [their] judgment for that of the agency as to the weight of the evidence on questions of fact," KRS 13B.150(2), while outlining an understandable test for determining if the fact-finder was "arbitrary, capricious or . . . abuse[d] [its] discretion" in violation of KRS 13B.150(2)(d) when assessing the evidence.

*Bradley v. Kentucky Ret. Sys.*, 567 S.W.3d 114, 120 (Ky. 2018); *see also 500 Assoc., Inc. v. Natural Resources and Envt'l Prot. Cabinet*, 204 S.W.3d 121, 131 (Ky. App. 2006). In *McManus v. Kentucky Retirement Systems*, we explained:

> "In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact." *Aubrey v. Office of Attorney General*, Ky. App., 994 S.W.2d 516, 519 (1998) (citing *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298, 309 (1972)). . . . A reviewing court is not free to substitute its judgment for that of an agency on a factual issue unless the agency's decision is arbitrary and capricious. *See Johnson v. Galen Health Care, Inc.*, Ky. App., 39 S.W.3d 828, 832 (2001).

124 S.W.3d 454, 458-59 (Ky. App. 2003). Again, with its most recent amendment to KRS 13B.150(3), the Kentucky legislature has refined its directive by requiring a reviewing court to consider whether the agency's factual findings are "without

-12-

support of the substantial evidence" and review de novo "the agency's final order on questions of law." KRS 13B.150(2)(c) and (3); *see also 500 Assoc., Inc.*, 204 S.W.3d at 131.

### III. ARGUMENTS AND ANALYSIS

The Retirement System appeals, arguing that the circuit court impermissibly reweighed the evidence, considered facts not in the administrative record, and failed to apply the proper test for judicial review. Additionally, it argues that the court erred in its conclusion that the Retirement Systems' findings regarding Grinninger's permanent incapacity and cumulative effect of his conditions were not supported by substantial evidence of record. Finally, it contends that the court erroneously reweighed the objective medical evidence to conclude that it compelled a finding in Grinninger's favor. Grinninger asks us to affirm the circuit court's order, arguing that the Board's final order was not based on substantial evidence and that the circuit court did not reweigh the evidence or fail to apply the proper test for judicial review.

The circuit court held that the Retirement System incorrectly assessed the physical exertion requirements of Grinninger's former job as medium versus heavy work as defined by KRS 61.600(5)(c). R. at 135. Further, it found that the Board's medical examiners and hearing officer improperly discounted the statements from Grinninger's treating physicians and failed to consider adequately

-13-

the cumulative effect of Grinninger's various conditions. R. at 135-36. Notably, the circuit court opined that: "An appropriate review of the record would give more weight to the opinions of Grinninger's treating physicians," and "[a]fter a complete review of the record, no reasonable person would be unconvinced by the evidence brought by Grinninger." R. at 137. Moreover, the court stated that "[t]o hold Grinninger's ability for many years to work through pain or stall degeneration of his various worsening ailments against him is improper, and to uphold such a decision would be a miscarriage of justice." R. at 136. Therefore, the circuit court concluded that the Retirement System's decision denying disability benefits was arbitrary and not supported by substantial evidence, and that "the objective medical evidence presented . . . was so compelling that no reasonable person could have failed to be persuaded by it." R. at 137.

The ultimate test for our review of the decision of an administrative agency is *McManus*, *supra*, which dictates that its decision must be supported by substantial evidence, defined "as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people." *Id.* at 458.

The circuit court duly noted that "over 1,000 pages of records from hospitals and physicians documenting his [Grinninger's] health problems" had been submitted. The court noted that the two examining physicians recommending

denial of benefits "either failed to address this evidence or failed to give it any weight." R. at 134. Additionally, when one of those two physicians objected to the lack of an FCE, Grinninger later cured this deficiency and supplied an FCE. Nonetheless, "the hearing officer declined to include an analysis of the FCE in his decision." *Id.*

The Retirement System contends that the court "impermissibly re-weighed evidence" or considered facts not on the record. On the contrary, the court did its job in reviewing **all of the evidence** -- especially evidence improperly ignored or unaddressed by the hearing officer/agency. The Retirement System contends that there was a lack of objective medical evidence and denigrates the opinions of Grinninger's treating physicians as unreliable. However, the court correctly observed that objective medical evidence includes such reports. "Treating physicians' reports are clearly objective medical evidence." R. at 135 (citing *Kentucky Ret. Sys. v. Lowe*, 343 S.W. 3d 642, 647 (Ky. App. 2011)). It acknowledges that the Retirement System may elect to give greater weight to the physicians that it has selected, but "it may not discount treating physicians' reports as failing the standard of objective medical evidence." *Id.*

In assessing the issue of whether Grinninger's custodial duties constituted medium or heavy labor, the Retirement System determined that his duties required merely medium labor. The court again cited a contradiction: that

the Custodian Job Description itself set forth in writing that the position required "the ability to perform **heavy** physical labor." As the court recited, "This description contradicts the hearing officer's finding that the position is medium work and supports a finding that the job is heavy work according to KRS 61.600(5)." R. at 136.

In addition to these errors and omissions on the part of the Retirement System, it wholly ignored or neglected to consider the cumulative effect of Grinninger's numerous ailments. Citing *Kentucky Retirement Systems v. Bowens*, 281 S.W.3d 776 (Ky. 2009), the court correctly observed that the cumulative effect of a claimant's various condition must be addressed. And they must be analyzed *in toto* rather than singularly so as to "fragmentize" the combined effect on the person. *Id.* at 783.

In the course of its assessment of Grinninger, the Retirement System drew attention to the fact that he had continued to work even though afflicted with so many ailments -- as if that fact were proof that in effect he was malingering. Instead of being rewarded or appreciated for his dedication to work despite his pain, he was effectively punished by his endurance of that pain as proof of adequate stamina -- not even receiving an acknowledgment that it was real. The court ably observed:

> To hold Grinninger's ability for many years to work
> through pain or stall degeneration of his various

-16-

worsening ailments against him is improper, and to uphold such a decision would be a miscarriage of justice. It ignores the obvious problem that the ability of a person who works through pain will inevitably decline with age and physical stress; the Plaintiff cannot be penalized for his long history of working through pain and other adverse physical symptoms that over time caused him to be unable to perform his job duties. R. at 137.

The court was also cognizant of the fact that Grinninger had indeed made a verbal request for accommodations that was ignored. It was not only ignored by his employer, but even more significantly at this juncture, it was **denied** by the hearing officer. The hearing officer actually -- erroneously and improperly -- found specifically that Grinninger **never requested accommodations**.

After our review of this record, we conclude that there was a fatal lack of substantial evidence to support the Retirement System's denial of disability benefits. Therefore, we affirm the soundly reasoned Opinion and Order of the Franklin Circuit Court.

MOYNAHAN, JUDGE, CONCURS.

ECKERLE, JUDGE, DISSENTS, AND FILES SEPARATE OPINION.

ECKERLE, JUDGE, DISSENTING: Respectfully, I dissent from the Majority and would reverse and remand the April 28, 2025, Opinion and Order of the Franklin Circuit Court granting disability benefits to Grinninger.

As the majority decision states, *McManus* and KRS 13B.150 establish the appropriate test for our review. 124 S.W.3d 454, 458-59 (Ky. App. 2003). As amended, KRS 13B.150(3) provides: "The court shall apply de novo review of the agency's final order on questions of law. An agency's **interpretation of a statute or administrative regulation shall not be entitled to deference** from a reviewing court." (Emphasis added.) It did not change the statutory requirement under KRS 13B.150(2) that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."

While recognizing that the General Assembly's 2025 amendment to KRS 13B.150 is significant, the amendment codifies rather than upends the relevant caselaw. The Kentucky Supreme Court has interpreted KRS 13B.150 as:

> [T]he legislative command that the courts "not substitute [their] judgment for that of the agency as to the weight of the evidence on questions of fact," KRS 13B.150(2), while outlining an understandable test for determining if the fact-finder was "arbitrary, capricious or . . . abuse[d] [its] discretion" in violation of KRS 13B.150(2)(d) when assessing the evidence.

*Bradley v. Kentucky Ret. Sys.*, 567 S.W.3d 114, 120 (Ky. 2018); *see also 500 Assoc., Inc. v. Natural Resources and Envt'l Prot. Cabinet*, 204 S.W.3d 121, 131 (Ky. App. 2006). In *McManus*, the Court also explained:

> "In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact." *Aubrey v. Office of*

> *Attorney General*, Ky. App., 994 S.W.2d 516, 519 (1998)
> (citing *Kentucky State Racing Commission v. Fuller*, Ky.,
> 481 S.W.2d 298, 309 (1972)). . . . A reviewing court is
> not free to substitute its judgment for that of an agency
> on a factual issue unless the agency's decision is arbitrary
> and capricious. *See Johnson v. Galen Health Care, Inc.*,
> Ky. App., 39 S.W.3d 828, 832 (2001).

124 S.W.3d at 458-59. With its most recent amendment to KRS 13B.150(3), the Kentucky legislature has refined its directive by requiring a reviewing Court to consider whether the agency's factual findings are "without support of the substantial evidence" and review *de novo* "the agency's final order on questions of law." KRS 13B.150(2)(c) and (3); *see also 500 Assoc., Inc.*, 204 S.W.3d at 131.

The "[d]etermination of the burden of proof also impacts the standard of review on appeal of an agency decision." *McManus*, 124 S.W.3d at 458. In a case, such as the one *sub judice*, where an agency denies relief to the party with the burden of proof, "the issue on appeal [before the Trial Court] is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it." *Id.* While affirming this compelling evidence standard for administrative decisions denying relief, the Kentucky Supreme Court has clarified *McManus*. In *Kentucky Retirement Systems v. Ashcraft*, the Court imposed a two-step review, first considering whether the administrative order is properly supported by substantial evidence. 559 S.W.3d 812, 819 (Ky. 2018); *see also Bradley*, 567 S.W.3d at 119. If the record contains substantial evidence for

both sides, *i.e.*, the evidence is in "equipoise," the *McManus* compelling evidence standard "properly breaks the tie." *Bradley*, 567 S.W.3d at 120.

Following *Ashcraft* and *Bradley*, the Supreme Court addressed the manner in which the compelling evidence standard should apply to particular types of evidence. In *Kentucky Retirement Systems v. Bowens*, the Supreme Court agreed with our application of the "cumulative effect rule." 281 S.W.3d 776, 778 (Ky. 2009) (citing *Dillon v. Celebrezze*, 345 F.2d 753, 757 (4th Cir. 1965)). Under circumstances where a claimant presents a series of multiple ailments, the provisions of KRS 61.600(5) require an analysis of the person's "residual functional capacity," necessitating that the fact-finder "evaluate the *cumulative effect* of [a claimant's] multiple ailments on the 'whole person.'" *Id*. at 783. However, the Supreme Court rejected the view that "the opinions of treating physicians are entitled to more weight than the opinions of the non-examining physicians, i.e., the treating physician rule." *Id.* The Supreme Court concluded that it was inappropriate to apply the "treating physician rule," previously adopted from Social Security Disability cases, as it is well-settled that, under Kentucky administrative law, "the trier of fact may evaluate the evidence presented and give the evidence the weight the fact-finder deems appropriate." *Id.* at 784 (citing *McManus*, 124 S.W.3d at 457-58).

Under KRS 61.600(3), Grinninger bore the burden to prove by a preponderance of "the objective medical evidence" that he is permanently and continuously incapacitated from performing "the job, or jobs of like duties, from which he received his last paid employment." A determination of incapacity "shall be based on the medical evidence contained in the member's file and the member's residual functional capacity and physical exertion requirements." KRS 61.600(5)(a)2. Further, "[t]he person's residual functional capacity shall be the person's capacity for work activity on a regular and continuing basis . . . assessed in light of the severity of the person's physical, mental, and other impairments." KRS 61.600(5)(b). Finally, KRS 61.600(5)(c) details whether the physical exertion requirements of the person's job constitute sedentary, light, medium, heavy, or very heavy work to which a claimant's "residual functional capacity" shall be compared.

The hearing officer determined that the physical exertion requirements for Grinninger's custodial job were "best described as medium work." A.R. at 1776. KRS 61.600(5)(c)3. defines "[m]edium work" as "work that involves lifting no more than fifty (50) pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five (25) pounds." The Circuit Court held that this finding was simply "wrong." R. at 135. Grinninger argues that his former job consisted of "[h]eavy work . . . that involv[ed] lifting no more than one hundred (100) pounds

-21-

at a time with frequent lifting or carrying of objects weighing up to fifty (50) pounds." KRS 61.600(5)(c)4. However, both the school district's description of the job duties and much of Grinninger's testimony – in other words, the facts submitted at the hearing – conflict with the Circuit Court's assessment; they describe medium work, such as taking out the garbage, cleaning, restocking supplies, and maintaining outdoor facilities. While Grinninger claimed that he was required to lift, carry, and push items weighing over 50 pounds, he testified under oath that he only occasionally had to reach such a level of physical exertion. For example, he sometimes pushed a floor buffer weighing almost 100 pounds and, in the winter, lifted bags of sand or salt used to treat walkways. He also worked with other custodians from whom he could seek assistance. Although he testified that he had verbally requested assistance with lifting heavy items, his claim is not supported by other evidence or satisfactorily characterized as a "reasonable accommodation by the employer as provided in 42 U.S.C.[6] sec. 12111(9) and 29 C.F.R.[7] Part 1630." KRS 61.600(3)(a).

Moreover, during the administrative process, in lieu of the definitions provided by KRS 61.600(5)(c)3., Grinninger asked the hearing officer to apply the Social Security Administration's medical-vocational guidelines, also known as the

---

[6] United States Code.

[7] Code of Federal Regulations.

"grid rules," which "consider the vocational factors of age, education, and work experience[.]" 20 C.F.R. § 404.1501(g). Grinninger claimed that "based upon his age, education, [and] relevant work history, [he] is unable to perform or sustain the duties of a Custodian and is entitled to Kentucky Retirement Disability." A.R. at 1711. Similarly, Grinninger cited the federal physical exertion requirements, under which "medium work" is characterized as "[e]xerting 20 to 50 pounds of force occasionally, and/or greater than negligible 10 to 25 pounds of force frequently, and/or up to 10 pounds constantly to move objects." A.R. at 1713 (quoting the United States Department of Labor's Dictionary of Occupational Titles). However, the grid rules and federal, physical-demand definitions conflict with and are inapposite to the definitions of KRS 61.600(5)(c). Additionally, KRS 61.600(3) requires an individualized assessment of whether Grinninger is permanently mentally or physically incapacitated since his LDOPE so as to prevent him from performing his former job, or jobs of like duties. This is an entirely different standard of disability than the one used by the Social Security Administration, which highlights the dangers of using the terminology of each program interchangeably. Therefore, the Circuit Court clearly erred by not affording deference to the hearing officer's finding of fact that most of Grinninger's job duties constituted "medium work" pursuant to KRS 61.600(5)(c).

The Circuit Court also erred in its findings that the hearing officer (1) improperly ignored or discounted objective medical evidence from Grinninger's treating physicians and (2) failed to consider adequately the cumulative effect of Grinninger's various conditions. The Supreme Court's opinion in *Bowens* should guide an analysis of both of these issues. 281 S.W.3d 776. *Bowens* explicitly rejected the treating physician rule, which, once again, has been applied only in a Social Security Disability context and provides that the opinions of treating physicians are entitled to greater weight that other objective medical evidence. *Id*. at 783. The Supreme Court specifically held that the treating physician rule was outside Kentucky' statutory scheme. *Id*. at 784. Pursuant to this binding precedent, as "fact-finder," the hearing officer had the discretion to evaluate *all the evidence* presented, including MRIs, surgical intervention assessments, treatment notes, the FCE, the statements by Grinninger's treating physicians, and the opinions of the medical examiners, and, thereafter, assign the weight that he deemed appropriate. *Id.* "Further, a reviewing appellate court cannot substitute its judgment for that of the fact-finder regarding evaluations of evidence or questions of fact." *Id.*

Similarly, *Bowens* properly establishes the cumulative-effect requirement. This rule provides that a hearing officer must evaluate the "cumulative effect" of a claimant's medical conditions and cannot conduct a

-24-

"fragmentized" evaluation, considering "the effect of each insular injury on [a claimant's] ability to perform [his] job duties." *Id.* at 783 (citing *Dillon*, 345 F.2d at 757). In this instance, after conducting an evaluation of each condition, the hearing officer explicitly found that Grinninger "failed to meet his burden to establish disability based upon the cumulative effect of his conditions." A.R. at 1779. This finding is supported by the record. Grinninger's physicians managed his cumulative conditions with conservative treatment, including medication and chiropractic treatment. His cumulative conditions remained largely unchanged between 2015 and 2018. He was not a candidate for surgical intervention due to his cumulative conditions being less than severe. Finally, he was able to continue active employment as a custodian well past the dates of his cumulative injuries.

It would have been improper simply to begrudge Grinninger's "ability to . . . work through pain or stall degeneration of his various worsening ailments." R. at 136. However, the substantial, objective, medical evidence, including MRIs and treatment notes, refuted Grinninger's claims of constant and unrelenting pain that could not be managed with medication and conservative treatment. And it is co-existentially wrong to suggest that the Retirement System is punishing rather than properly appreciating and rewarding Grinninger's dedication to his work despite his endurance of his health conditions. Like other local government employees, Grinninger is entitled to the benefits provided under an inviolable

contract as defined by KRS 78.510 to 78.852.[8] The Retirement System's award

(opposed to reward) of disability benefits is subject to statutory and regulatory

requirements, which Grinninger did not meet. Further, although not applicable to

the review of his disability status, Grinninger is eligible for a reduced retirement

and health benefits commensurate with his age and years of service. Therefore, the

Retirement System's proper denial of disability benefits will not result in a

manifest injustice as the Circuit Court and majority suggest.

Finally, the Circuit Court's admonishment that the Retirement System

should have rebutted the treating physicians' opinions by requiring Grinninger to

undergo another physical examination is misplaced and amounts to burden-

shifting. R. at 134; *see Kentucky Ret. Sys. v. West*, 413 S.W.3d 578, 581 (Ky.

2013). While KRS 61.665 permits the Retirement System to require a claimant to

undergo additional physical examinations at the Retirement System's cost, it is not

required to do so. *Id.* "The Systems may or may not present evidence to rebut the

claimant's proof. Regardless, the burden does not shift to the Systems." *Id.*

Similarly, KRS 61.665 does not compel Grinninger to submit additional supporting

medical information for reevaluation by the medical examiners prior to requesting

---

[8] KRS 78.852(1) provides: "For members who begin participating in the County Employees Retirement System prior to January 1, 2014, it is hereby declared that in consideration of the contributions by the members and in further consideration of benefits received by the county from the member's employment, KRS 78.510 to 78.852 shall, except as provided in KRS 6.696, constitute an inviolable contract of the Commonwealth, and the benefits provided therein shall not be subject to reduction or impairment by alteration, amendment, or repeal."

a formal hearing. However, without such a reevaluation, Grinninger's later claim that the hearing officer erred by relying on the medical examiners' original opinions is unconvincing. Without the benefit of a medical review of the additional evidence Grinninger submitted, we would be purely speculating if we surmised that one or both of the medical examiners who found against him would have been persuaded to change their opinion(s).

Significantly, the Circuit Court erred in its chronology of this procedural history. The Trial Court's criticism of the medical examiners for ignoring the treating physicians' statements and FCE is misplaced, as those exhibits were not tendered until *after* Grinninger's request for a formal hearing. We, too, do not have the luxury of knowing the manner in which the parties would have proceeded had the Circuit Court chosen to remand the administrative case for the medical examiners to review those records. Instead, the Circuit Court reweighed the evidence in favor of Grinninger, redistributed the burden of proof, and granted Grinninger disability benefits that a majority of the medical examiners, the hearing officer, and Board had all denied.

In sum, the Circuit Court erred by substituting its judgment for that of the Board. The Board's decision to deny Grinninger retirement disability benefits under KRS 61.600 was supported by the substantial, objective, medical evidence. The treating physicians' opinions and FCE favoring Grinninger were no more

persuasive than the other, and larger amount of, objective medical evidence disfavoring a determination that Grinninger was permanently incapacitated from the duties of his former job or a job of like kind pursuant to KRS 61.600. The evidence in Grinninger's favor was not so compelling as to persuade all reasonable persons that he is entitled to disability benefits. Pursuant to KRS 13B.150 and relevant case law, the Board's evaluation of the evidence is entitled to deference, as it was not violative of or in excess of statutory authority, arbitrary, capricious, characterized by an abuse of its discretion, or otherwise deficient under the law.

Based on the foregoing reasons, I would reverse and remand the Opinion and Order of the Franklin Circuit Court with instructions to affirm the Board's order.

BRIEFS FOR APPELLANT:

Kevin Edelman
Kentucky Public Pensions Authority
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Emily A. Brown
Edgewood, Kentucky